Kenneth W. FLEMING, Appellant–Defendant,

v.

INTERNATIONAL PIZZA SUPPLY CORP., Appellee–Plaintiff.

No. 49A02–9802–CV–193.

Court of Appeals of Indiana.

March 29, 1999.

---

David E. Wright, Ronald G. Sentman, Johnson, Smith, Pence Densborn, Wright & Heath LLP, Indianapolis, Indiana, Attorney for Appellant.

Alan S. Brown, Robert W. Wright, Locke Reynolds Boyd & Weisell, Indianapolis, Indiana, Attorney for Appellee.

**OPINION**

STATON, Judge

Kenneth W. Fleming brings this interlocutory appeal after the trial court denied his motion for leave to file a second amended counterclaim. Fleming presents four issues for our review, which we restate as:

I. Whether the trial court abused its discretion by denying Fleming's motion for leave to file a second amended counterclaim, thereby refusing his request to add a derivative action and a fraudulent conveyance claim.

II. Whether IND.CODE § 23–1–44–8(c) (1993), governing dissenters' rights, violates Article I, § 12 of the Indiana Constitution.

III. Whether IND.CODE § 23–1–44–8(c) violates Article I, § 23 of the Indiana Constitution.

IV. Whether IND.CODE § 23–1–44–8(c) violates Article I, § 24 of the Indiana Constitution.

We affirm in part, reverse in part, and remand.

Fleming is a minority shareholder in International Pizza Supply Corporation ("International Corp."). In 1991, Peter Jensen, the majority shareholder, approved a sale of the assets of International Corp. to International Pizza Supply Company, Inc. ("IPS Co.").[1] Fleming disapproved of the asset sale and exercised his dissenters' rights under IC 23–1–44–8. Fleming did not agree with the value that Jensen applied to Fleming's shares of International Corp. stock, and Jensen filed a petition to determine value of shares. Fleming filed a counterclaim against Jensen, Kim, International Corp. and IPS Co. (collectively, "Jensen"). Fleming's original counterclaim included three contract-related claims and three claims relating to fraud and breach of fiduciary duty. The trial court granted summary judgment in favor of Jensen on the three fraud and breach of fiduciary duty claims. This court reversed the grant of summary judgment. *Fleming v. International Pizza Supply Corp.,* 640 N.E.2d 1077 (Ind.Ct.App.1994) ("*Fleming*

---

1. Jensen and Harry Kim are the sole shareholders of IPS Co.

*I* "). On transfer, our supreme court affirmed the decision of the trial court granting summary judgment. *Fleming v. International Pizza Supply Corp.*, 676 N.E.2d 1051 (Ind.1997) ("*Fleming II* "). The case was remanded to the trial court, where Fleming moved for leave to amend his counterclaim in order to add a derivative action and a fraudulent conveyance claim. The trial court denied Fleming's motion. This appeal ensued.

### I.

### *Denial of Motion for Leave to Amend*

 Fleming contends that the trial court erred when it denied his motion for leave to amend his counterclaim. Ind. Trial Rule 15(A) provides that a complaint may be amended by leave of the trial court, and that the trial court should grant such leave "when justice so requires." Amendments to the pleadings are to be liberally allowed in order that all issues involved in a lawsuit are presented to the jury. *General Motors Corp. v. Northrop Corp.*, 685 N.E.2d 127, 142 (Ind.Ct. App.1997). However, the trial court has broad discretion in granting or denying amendments to the pleadings, and we will reverse only upon a showing of abuse of discretion. *Id.* An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 180 (Ind.1993).

 Fleming first contends that the trial court abused its discretion when it denied his motion for leave to add a derivative action. Citing footnote nine of *Fleming II*, Fleming argues that our supreme court explicitly allowed him to bring such an action, and that the trial court's denial was a misinterpretation of the law set forth in *Fleming II*. However, *Fleming II* did not give Fleming the green light to file a derivative suit after his dissenters' rights had arisen. Instead, the supreme court stated, "We believe it is equally clear that the [Business Corporation Law ("BCL")] did not intend to restrict any claims of wrongdoing that a corporation or shareholder brings *before* the corporate action creating dissenters' rights occurs." 676 N.E.2d at 1057 n. 9 (emphasis added). Thus, under *Fleming II*, if Fleming had filed his derivative action before the occurrence of the corporate action that created his dissenters' rights, then his derivative action could go forward. However, Fleming had not initiated a derivative suit at the time his dissenters' rights arose, when a majority of International Corp. approved of the sale of its assets. In fact, Fleming did not attempt to file a derivative action until his claims for breach of fiduciary duty and fraud had been disposed of on summary judgment. The trial court did not misinterpret *Fleming II*, and did not abuse its discretion in denying Fleming's motion for leave to add a derivative action.

 Fleming also contends that the trial court abused its discretion when it denied his motion for leave to add a fraudulent conveyance claim. Specifically, Fleming argues that his standing to bring the fraudulent conveyance claim stems from his status as a creditor of International Corp. under his employment-related contract claims, and that the fraudulent conveyance claim is not precluded by *Fleming II*.[2] We agree with Fleming that the decision in *Fleming II* was limited to the interpretation of IC 23–1–44–8(c)'s exclusive remedy for dissenters to the sale of assets.[3] We also agree that Fleming is not attempting to bring the fraudulent conveyance claim based on his status as a dissenting shareholder. Instead, his claims arise from his status as a creditor under his employment contract. Therefore, Fleming's proposed fraudulent conveyance claim is tied to his contract claims, which are not governed by the BCL and were left intact after *Fleming II*. Thus, to the extent that the trial court

---

2. In *Fleming II,* our supreme court stated that the employment and contract claims "are separate and independent of the claims addressed in this interlocutory appeal and are not affected by this opinion." 676 N.E.2d at 1052 n. 3.

3. IC 23–1–44–8(c) provides, in relevant part: "A shareholder ... who is entitled to dissent and obtain payment for the shareholder's shares under this chapter ... may not challenge the corporate action creating ... the shareholder's entitlement."

relied on *Fleming II* to deny Fleming's motion for leave to add a fraudulent conveyance claim, the trial court abused its discretion. Therefore, we remand to the trial court for a clarification of its reasons for denying Fleming's motion to amend his complaint to add a fraudulent conveyance claim.

## II.

### *Article I, Section 12*

■ Fleming argues that the dissenters' rights provision of the BCL violates Art. I, § 12 of the Indiana Constitution.[4] Specifically, Fleming contends that IC 23–1–44–8(c) fails to provide him with a remedy because, even if he is awarded a favorable appraisal value for his shares in International Corp., he will not have a way to collect that value. Too, Fleming argues that the dissenters' rights statute precludes him from bringing claims against Jensen and Kim individually, thereby foreclosing common law claims otherwise available to him.

■ At the outset, we note that statutes come to the court "cloaked with a presumption of constitutionality." *Adoptive Parents of M.L.V. v. Wilkens*, 598 N.E.2d 1054, 1058 (Ind.1992). Furthermore, our supreme court has already held that IC 23–1–44–8(c) does not violate Art. I, § 12. As set forth in *Fleming II*, IC 23–1–44–8(c) provides Fleming with an adequate remedy—an appraisal proceeding where the value of his shares is determined. 676 N.E.2d at 1057. Too, the dissenters' rights statute gives Fleming the opportunity to argue that Jensen valued Fleming's shares too low in the asset sale, due to Jensen's and Kim's breach of fiduciary duty and fraud. *Id.* Fleming's argument that the dissenters' rights statute violates Art. I. § 12 because he is not guaranteed the collection of the appraised value is of no merit. Fleming cites to no authority holding that the collection of a judgment is guaranteed by the constitution, and we refuse to so hold.

Our supreme court has also addressed Fleming's argument that the dissenters' rights statute unconstitutionally denies his common law claims against Jensen and Kim. In *Fleming II*, our supreme court stated, "While we acknowledge that the appraisal remedy does not provide for the individual liability of majority shareholders ... we believe that those are the policy choices made by the legislature in adopting Ind.Code § 23–1–44–8(c) and are clearly within the legislature's prerogative." *Id.* at 1058. Therefore, we hold that IC 23–1–44–8(c) does not violate Art. I, § 12.

## III.

### *Article I, § 23*

Fleming argues that the trial court's interpretation of IC 23–1–44–8(c) violates the equal privileges and immunities clause of the Indiana Constitution.[5] Fleming contends that IC 23–1–44–8(c) creates a separate class of creditors who are granted unequal privileges and immunities.

■ When analyzing a challenge under Art. I, § 23, we are guided by our supreme court's holding in *Collins v. Day*, 644 N.E.2d 72 (Ind.1994):

> Article I, Section 23 of the Indiana Constitution imposes two requirements upon statutes that grant unequal privileges or immunities to differing classes of persons. First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. Finally, in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion.

*Id.* at 80. When reviewing IC 23–1–44–8(c), we must presume it to be constitutional, and place the burden on Fleming to negate "every conceivable basis which might have sup-

---

**4.** Art. I, § 12 provides that every person who suffers injury to his "person, property, or reputation, shall have remedy by due course of law."

**5.** Art. I, § 23 provides: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens."

ported the classification." *Id.* Further, as long as the distinctions drawn by the General Assembly are not arbitrary or manifestly unreasonable, we may not substitute our judgment for that of the legislature. *Id.*

■ Fleming first argues that IC 23–1–44–8(c) creates a separate class of creditors consisting only of dissenting shareholders, and that based on his classification as a dissenting shareholder he is being denied the right to bring claims available to other creditors of the corporation. Before the *Collins* analysis is applied, we must first determine whether Fleming has shown that the statute grants unequal privileges or immunities to differing classes of creditors. *McIntosh v. Melroe Co.*, 682 N.E.2d 822, 826 (Ind.Ct.App. 1997). He has not. The gravamen of Fleming's argument is that, as a dissenting shareholder-creditor, he is being denied privileges available to other corporate creditors. Fleming argues that corporate creditors are able to pursue derivative actions, while dissenting shareholder-creditors are not. However, a derivative action is a claim available only to shareholders seeking redress for an injury to the corporation. *See* IND.CODE §§ 23–1–32–1 to –5 (1993). Therefore, the action being denied to Fleming is one that is likewise unavailable to other corporate creditors. For this reason, we hold that Fleming has not met his initial burden of showing that IC 23–1–44–8(c), as it relates to creditors, grants unequal privileges or immunities to differing classes of persons.

■ Fleming next argues that IC 23–1–44–8(c) creates a separate class of shareholders who are granted unequal privileges and immunities. In this context, we agree with Fleming that the statute does create two distinct classes. The first class consists of shareholders who agree to a sale of corporate assets, while the second class is composed of those shareholders who dissent to the sale of assets. We also agree that the dissenting shareholders are not afforded the same privileges and immunities as the non-dissenters, as dissenters are prevented from bringing derivative actions against the corporation af-

ter dissenters' rights have arisen. Therefore, we proceed to the merits of Fleming's argument.

First, we must determine whether the disparate treatment accorded by the legislation is reasonably related to the inherent characteristics that separate the two classes. *Collins*, 644 N.E.2d at 80. We hold that it is. The shareholders in the two classes are distinguished by their decision to dissent to or acquiesce in the sale of corporate assets. Under the statute, the classes are treated disparately because the General Assembly wanted to avoid disruption of corporate transactions and further the policy of corporate majority rule. Moreover, the disparate treatment provides a benefit to dissenters because it allows the resolution of dissenters' claims on a timely basis. *See* IC 23–1–44–8(c), Official Comments Subsection (c); *Fleming II*, 676 N.E.2d at 1057. The disparate treatment is reasonably related to the characteristic of whether a shareholder is a dissenter to the sale of assets. Therefore, the first prong of *Collins* is satisfied.

To satisfy the second prong of *Collins*, the preferential treatment afforded by the statute must be uniformly applicable to all persons similarly situated. 644 N.E.2d at 80. Fleming has not shown that the statute is not uniformly applied. Dissenting shareholders are uniformly barred from bringing derivative actions after their dissenters' rights have arisen; non-dissenting shareholders are uniformly allowed to bring actions against the corporation. We hold that IC 23–1–44–8(c) satisfies the second prong of *Collins*. The dissenters' rights statute does not violate Art. I, § 23.

## IV.

### *Article 1, Section 24*

■ Fleming argues that the trial court's interpretation of IC 23–1–44–8(c) in light of *Fleming II* violates Art. 1, § 24 of the Indiana Constitution.[6] Although we agree with Fleming that the trial court erred in ordering that *all* of Fleming's claims be tried

---

6. Art. I, § 24 provides: "No ex post facto law, or law impairing the obligation of contracts, shall ever be passed."

in the appraisal proceeding, we do not agree that the trial court's interpretation of IC 23–1–44–8(c) violates Art. I, § 24. Nothing in its order reveals that the trial court was interpreting the statute when it entered its order. Instead, it was merely relying on the admonition of *Fleming II*—that all of Fleming's claims relating to the sale of assets of International Corp. be tried in the context of the appraisal proceeding. The trial court did err in entering the portion of its order stating that all claims were to be tried in the appraisal proceeding, and we remand with instructions to the trial court to amend its order to state that the employment and contract-related claims are not to be tried in the context of the appraisal proceeding. However, because the trial court was not relying on IC 23–1–44–8(c) in entering its order, we decline Fleming's invitation to hold that the statute violates Art. I, § 24.

Affirmed in part, reversed in part, and remanded.

RILEY, J., and BROOK, J., concur.