Rodney E. YOUNG, Jason R. Banach, Karen T. Banach, Ted E. Hall, and Michael E. Hall, on behalf of themselves and all others similarly situated, Appellants–Plaintiffs,

v.

GENERAL ACCEPTANCE CORPORATION, Malvin L. Algood, Russell E. Algood, Rollin M. Dick, Eugene L. Henderson, Donald E. Brown, James J. Larkin, John G. Algood, Janet Algood, Shirley Cook, Jeffrey J. Algood Irrevocable Trust, David R. Algood Irrevocable Trust, Stuart R. Algood Irrevocable Trust, and Conseco, Inc., Appellees–Defendants.

No. 53A04–9911–CV–498.

Court of Appeals of Indiana.

Nov. 22, 2000.

Rehearing Denied Jan. 17, 2001.

Eric Allan Koch, Applegate, McDonald & Koch, P.C., Bloomington, Indiana, Timothy J. Storm, Storm & Gottesman, Chicago, Illinois, Attorneys for Appellants.

Thomas A. Withrow, O. Wayne Davis, B. Keith Shake, Henderson, Daily, Withrow & DeVoe, Indianapolis, Indiana, Geoffrey M. Grodner, Lonnie D. Johnson, Mallor, Clendening, Grodner & Bohrer, LLP, Bloomington, Indiana, Joseph H. Yeager, David K. Herzog, Michael J. Valaik, Baker

& Daniels, Indianapolis, Indiana, Attorneys for Appellees.

## OPINION

ROBB, Judge

Rodney E. Young, Jason E. Banach, Karen T. Banach, Ted E. Hall and Michael E. Hall, on behalf of themselves and all others similarly situated (referred to collectively as the "common shareholders") sued General Acceptance Corporation ("GAC"), Malvin L. Algood, Russell E. Algood, Rollin M. Dick, Eugene L. Henderson, Donald E. Brown, James J. Larkin, John G. Algood, Janet Algood, Shirley Cook, the Jeffrey J. Algood Irrevocable Trust, the David R. Algood Irrevocable Trust, the Stuart R. Algood Irrevocable Trust, and Conseco, Inc. (referred to collectively as the "defendants") for breach of fiduciary duties, violation of the Indiana Control Shares Acquisition Statute and appraisal rights under the Indiana Dissenters' Rights Statute arising from the merger of GAC with a wholly-owned subsidiary of Conseco. The defendants moved for summary judgment, and the common shareholders filed a cross-motion for summary judgment. The trial court granted the defendants' motion and denied the common shareholders' motion. The com-

mon shareholders now appeal.[1] We affirm.

### Issues

 The common shareholders raise the following restated issues for our review:

1. Whether the trial court properly dismissed Count XI[2] of the common shareholders' complaint alleging violation of the Control Shares Acquisition Statute for failure to state a claim; and

2. Whether the trial court properly granted summary judgment on Counts I through X of the common shareholders' complaint on finding that the Indiana Dissenters' Rights statute barred such claims and also that the claims asserted were derivative and should have been asserted by GAC.[3]

### Facts and Procedural History

Prior to 1988, Malvin Algood and Russell Algood operated several businesses, including car dealerships. In 1988, they founded GAC, a "specialized consumer finance company" which funded and serviced high risk installment contracts primarily secured by automobiles. Malvin served as the chairman of the Board of

---

1. Oral Argument was heard in this case on October 12, 2000, on the campus of the University of Indianapolis in Indianapolis, Indiana. We extend our appreciation to the University administration, staff and students for their hospitality and commend the parties' attorneys for their advocacy.

2. The common shareholders also contend in their statement of "Issues Presented for Review" that the trial court erred in dismissing Count XII of their complaint, which sought appraisal rights pursuant to the Dissenters' Rights Statute. However, as will be seen in the discussion below, the common shareholders maintain throughout their brief that the Dissenters' Rights Statute does not apply, and they have not independently argued in their brief why their claim for dissenters' rights was erroneously dismissed. This issue is, therefore, waived. Moreover, the common shareholders note in their brief that, although

they dispute that the Dissenters' Rights Statute applies or that it represents their exclusive remedy, they have joined with other GAC shareholders in an independent action seeking appraisal rights. Finally, as will be seen in the discussion of the Dissenters' Rights Statute below, the onus is on the corporation to either institute the appraisal proceeding or pay the dissenters the amount demanded. There is no procedure for the dissenters to implement an appraisal proceeding.

3. The common shareholders' brief also lists as an issue presented for review "[w]hether the trial court erred as a matter of law in denying [their] cross-motion for summary judgment as to liability on Counts I through XI of the Complaint." Brief of Appellant at 1. However, the common shareholders wholly fail to make any independent argument with respect to this purported issue, and thus, it is waived for our consideration.

Directors and as chief executive officer, and Russell served as president and chief operating officer of GAC. GAC is a publicly traded company. GAC had a $100 million line of credit with General Electric Capital Corporation ("GECC"), which provided the majority of GAC's working capital for buying auto loans.

On April 10, 1997, there were 6,022,000 shares of GAC common stock issued and outstanding. Of those, 1,793,100 shares, or approximately thirty percent, were held by public shareholders. The remainder of the shares were held by Malvin, Russell, and six other Algood family members or family trusts. On April 10, GAC shares closed at $3.25 per share.

On April 11, 1997, a Stockholders' Agreement and Securities Purchase Agreement were entered into between Conseco, GAC, Capitol American Life Insurance Company ("CALI"), and the Algood defendants. CALI is a wholly-owned subsidiary of Conseco. The Stockholders' Agreement was entered into for the purpose of establishing the composition of GAC's Board of Directors, limiting the manner by which the Algood defendants' stock could be transferred, and establishing the terms of an acceptable tender offer by Conseco. The execution of the Stockholders' Agreement was a condition to CALI's acquisition of GAC securities pursuant to the Securities Purchase Agreement also entered into on that date. For our purposes, the relevant portions of the Stockholders' Agreement provided that:

1. The GAC Board of Directors was increased in size from five to six members;

2. Until the debentures represented by the Securities Purchase Agreement were no longer outstanding, the Algood defendants would vote their shares to elect or appoint two persons designated by Conseco to GAC's Board of Directors; and

3. As long as the Algood defendants owned more than ten percent of the issued and outstanding shares of GAC stock, CALI would vote all of its shares to elect or appoint one person designated by the majority stockholders to GAC's Board of Directors.

Pursuant to the Securities Purchase Agreement (which is not a part of the record), CALI made a $10 million dollar investment in GAC by purchasing $10 million in 12% subordinated convertible notes. These notes were convertible, at any time at the option of CALI and upon ten days written notice to GAC, into shares of GAC common stock. Also on April 11, 1997, GAC issued approximately $3.5 million in 12% subordinated convertible notes to several members of the Algood family in exchange for certain promissory notes previously given by GAC to those family members in an equivalent amount. Finally, the GAC Board of Directors increased the number of Directors from five to six pursuant to the Shareholder Agreement. On July 8, 1997, defendants Rollin Dick and James Larkin were added to the Board of Directors pursuant to that provision of the Shareholder Agreement allowing Conseco to designate two Directors.

On September 16, 1997, Conseco agreed to guarantee $10 million of GAC's indebtedness to GECC and GECC agreed to restructure GAC's existing credit agreement. In exchange for the Guaranty, GAC executed and delivered $10 million in 12% subordinated convertible notes to Conseco. As further consideration for the Guaranty, GAC issued warrants to Conseco for the purchase of 500,000 shares of authorized but unissued common stock at $1.00 per share. To compensate for the corresponding reduction in conversion price of the 12% convertible subordinated notes previously issued on April 11, 1997, to CALI and the Algood family, an additional number of shares of authorized but unissued common stock were reserved for issuance to the holders of those notes. Also, GAC borrowed $1.5 million from members of the Algood family and execut-

ed and delivered a comparable amount of 12% convertible subordinated notes to them, subordinate to GAC's indebtedness to GECC and Conseco. Six million additional shares of authorized but unissued common stock were reserved for issuance pursuant to those notes.

On March 11, 1998, GAC entered into an agreement with Conseco whereby Conseco reaffirmed its $10 million Guaranty of GAC's indebtedness to GECC, and GAC sold to Conseco or its affiliate sixteen million shares of GAC's authorized but unissued common stock at a price of $0.25 per share, for a total purchase price of $4 million. The purchase price for the 500,000 shares of common stock previously reserved for Conseco pursuant to the warrants issued September 16, 1997, was reduced from $1.00 per share to $0.25 per share. Also, to compensate for the reduction in the conversion price of the previously issued 12% convertible subordinated notes, fifty-three million shares of authorized but unissued common stock were reserved for issuance to the holders of those notes, which total includes the six million shares previously reserved. Finally, the shares of common stock and 12% convertible subordinated notes then owned by members of the Algood family were transferred to Conseco or its affiliates. Thus, Conseco acquired 3,814,000 shares of common stock in GAC at $0.30 per share.

Thereafter, Conseco made a merger proposal between GAC and CIHC, a wholly-owned subsidiary of Conseco, to GAC's Board of Directors, proposing that all shares of common stock then held by persons other than Conseco would be canceled and exchanged for the right to receive $0.30 per share. GAC then announced an August 31, 1998, shareholders meeting to vote on the proposed merger.

On August 19, 1998, the common shareholders filed a "Class Action Complaint" against the defendants, alleging twelve counts:

1. Four counts of breach of the fiduciary duty of loyalty against members of GAC's Board of Directors in connection with the April 1997, September 1997, November 1997, and March 1998 transactions as described above;

2. Four counts of breach of the fiduciary duty of due care against members of GAC's Board of Directors in connection with the April 1997, September 1997, November 1997, and March 1998 transactions;

3. One count of breach of the fiduciary duty of loyalty to GAC against members of the Algood family, who were the controlling shareholders in GAC;

4. One count of breach of fiduciary duty of loyalty to GAC against controlling shareholder Conseco;

5. One count of violation of Indiana Code chapter 23–1–42, the Control Shares Acquisition statute; and

6. One count alleging Dissenters' Rights and seeking appraisal.

The common shareholders also sought a preliminary injunction to preserve the *status quo* by preventing Conseco from voting its shares and also preventing GAC from recognizing the votes of Conseco's shares at the August 31, 1998 shareholders' meeting pending the outcome of their class action suit. After a hearing, the trial court denied the common shareholders' motion for preliminary injunction. Thereafter, the merger proceeded.

The defendants filed motions to dismiss, or in the alternative, for summary judgment. The common shareholders also filed a motion for summary judgment. Following a hearing, the trial court entered its order granting the defendants' motions to dismiss and for summary judgment and denying the common shareholders' motion. In pertinent part, the order provides as follows:

... The Court now finds that there is no genuine issue as to any material fact and that all defendants are entitled to summary judgment [ ] on the [common shareholders'] claims in Counts 1

through 10 as a matter of law, and to dismissal of Counts 11 and 12 for the following reasons:

. . .

4. Counts 1 through 10 of the Complaint are barred by the Indiana's [sic] Dissenters' Rights Statute because the claims asserted challenge corporate action, i.e. a merger, that entitled the [common shareholders] to the right to receive cash in the amount of the face value of their shares. According to the Dissenters' Rights Statute, this "appraisal" right is the [common shareholders'] exclusive remedy, whether or not [they] exercise it, and [they] are precluded from maintaining separate actions outside of the dissenters' rights process. . . . Thus, the [common shareholders'] claims for breach of fiduciary duty are barred.

5. Independent of the Dissenters' Rights Statute's bar to Counts 1–10 of the Complaint, there is another reason these claims are defective as a matter of law. The Complaint alleges that the [common shareholders] "suffered dilution of their position and direct economic harm due to a drastic decline in the value of their GAC stock" as a "direct result of the breaches of duty alleged in the complaint." Although [the common shareholders] claim that the alleged fiduciary duties that the defendants breached may be enforced directly by [them], Indiana law directly contradicts this allegation. . . .

6. . . . The [common shareholders] make no allegation supporting application of any of the exceptions to Indiana's general rule requiring derivative actions. Therefore, counts 1 through 10 of the Complaint also fail as a matter of law because the claims are derivative and may be asserted only by GAC.

. . .

7. Count 11 is defective because, as this Court correctly found in the injunction proceeding, no defendant violated the Control Share Acquisition Statute.

The Complaint's allegations regarding agreements by certain shareholders to vote their shares in favor of two director nominees do not constitute a "control share acquisition" within the meaning of the Statute. That Statute also does not grant a private right of action under the circumstances now before the Court.

8. Moreover, [the common shareholders] are estopped to argue that there was no valid merger to trigger the Dissenters['] Rights Statute. [The common shareholders] themselves plead in Count XII of the Complaint, that they are entitled to appraisal under the Dissenters['] Rights Statute. That allegation presupposes the validity of the GAC merger as an event triggering dissenters' rights.

. . .

9. Count 12, [the common shareholders'] assertion of dissenters' rights, is barred by the Dissenters' Rights Statute itself. First, the Dissenters['] Rights Statute provides that the corporation, in this case GAC, must commence the appraisal proceeding. . . . There is no provision for an action by the shareholders. Second, the Dissenters['] Rights Statute also sets forth a series of notice requirements. . . . However, [the common shareholders] do not allege compliance with these requirements. Accordingly, [the common shareholders'] claim for appraisal under Count 12 is dismissed.

10. In sum, the Court finds that judgment is appropriate as a matter of law on Counts 1 through 10 of the Complaint because (a) Indiana law bars the post-merger pursuit of the [common shareholders'] breach of fiduciary duties claims outside of the dissenters' rights process, and (b) the Complaint alleges wrongdoing to GAC, and any action based on those alleged wrongs belongs solely to GAC, not its shareholders. Counts 11 and 12 are dismissed for failure to state a claim under the Control Share Acquisition Statute and the Dissenters' Rights Statute.

R. 1101–04. The common shareholders filed a motion to correct errors, which motion was denied. This appeal ensued.

### Discussion and Decision

### I. Dismissal of Control Share Acquisition Violation Claim

The common shareholders contend that the defendants violated the Indiana Control Shares Acquisition Statute, rendering the purported merger void, and that the trial court erred in dismissing Count XI of their complaint which alleged such a violation.

### A. Standard of Review

■■■ Our standard of review of a dismissal granted pursuant to Trial Rule 12(B)(6) is well-settled:

A trial rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of a claim, not the facts supporting it. Therefore, we view the pleadings in the light most favorable to the nonmoving party and draw every reasonable inference therefrom in favor of that party. When reviewing a ruling on a motion to dismiss, we stand in the shoes of the trial court and must determine if the trial court erred in its application of the law.

*Borgman v. Aikens,* 681 N.E.2d 213, 216–17 (Ind.Ct.App.1997), *trans. denied.* When reviewing a motion to dismiss for failure to state a claim, "this court accepts as true the facts alleged in the complaint." *Minks v. Pina,* 709 N.E.2d 379, 381 (Ind. Ct.App.1999), *trans. denied.* "We will affirm a successful T.R. 12(B)(6) motion when a complaint states a set of facts, which, even if true, would not support the relief requested in that complaint." *Id.* Furthermore, we will affirm the trial court's ruling if it is sustainable on any basis found in the record. *Id.*

### B. Propriety of Dismissal

The trial court found that dismissal of the common shareholders' claim that the defendants had violated the Control Shares Acquisition Statute was appropriate because the complaint's allegations regarding the Stockholder Agreement amounting to a control share acquisition are insufficient as a matter of law to show that such an acquisition in fact occurred.

#### 1. Control Shares Acquisition Statute

The common shareholders contend that the purported merger was void because it violates the Indiana Control Shares Acquisition Statute. As explained by the Supreme Court, the Control Shares Acquisition Statute

focuses on the acquisition of "control shares" in an issuing public corporation. Under the Act, an entity acquires "control shares" whenever it acquires shares that, but for the operation of the Act, would bring its voting power in the corporation [in the election of directors] to or above any of three thresholds: 20%, 33 1/3%, or 50%. [Ind.Code] § 23–1–42–1. An entity that acquires control shares does not necessarily acquire voting rights. Rather, it gains those rights only "to the extent granted by resolution approved by the shareholders of the issuing public corporation." [Ind.Code] § 23–1–42–9(a). Section 23–1–42–9(b) requires a majority vote of all disinterested shareholders holding each class of stock for passage of such a resolution. The practical effect of this requirement is to condition acquisition of control of a corporation on approval of a majority of the pre-existing disinterested shareholders.

*CTS Corp. v. Dynamics Corp. of America,* 481 U.S. 69, 72–75, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987). The purpose of the Control Shares Acquisition Statute is to give the shareholders of certain qualifying corporations "a right to vote collectively on a potentially fundamental change in the nature of their corporation—namely, its shift to being an entity in which a single

shareholder acquires a significant level of dominance over the future governance of the corporation." Official Introductory Comment to Ind.Code chapter 23–1–42. Because Indiana's Business Corporation Law gives shareholders the right to vote on significant matters such as mergers, share exchanges, and the sale of all or substantially all of a corporation's assets, the Control Shares Acquisition Statute "reflects the General Assembly's recognition that a single shareholder's acquisition of a controlling block of shares can be an equally fundamental, far-reaching event for the corporation, and its decision ... that it is appropriate for shareholders to vote collectively on this issue as well." *Id.*

### 2. Applicability of the Control Shares Acquisition Statute

■ The common shareholders contend that Conseco acquired control shares upon execution of the Stockholders' Agreement because with that Agreement, Conseco acquired the power to direct the exercise of the Algood family's shares to elect one-third of GAC's directors. The Agreement, as described above, increased the size of GAC's Board of Directors to six, and stated that the Algood family would exercise their votes to elect or appoint to the Board two people nominated by Conseco. If Conseco did effect a control share acquisition via this Agreement, certain steps are required to comply with the statute, none of which were complied with here:

> The shareholders decide whether to confer rights on the control shares at the next regularly scheduled meeting of the shareholders, or at a specially scheduled meeting. The acquiror can require management of the corporation to hold such a special meeting within 50 days if it files an "acquiring person statement," requests the meeting, and agrees to pay the expenses of the meeting. *See* [Ind. Code] § 23–1–42–7. If the shareholders do not vote to restore voting rights to

the shares, the corporation may redeem the control shares from the acquiror at fair market value, but it is not required to do so. [Ind.Code] § 23–1–42–10(b). Similarly, if the acquiror does not file an acquiring person statement with the corporation, the corporation may, if its by-laws or articles of incorporation so provide, redeem the shares at any time after 60 days after the acquiror's last acquisition. [Ind.Code] § 23–1–42–10(a).

*CTS Corp.*, 481 U.S. at 75, 107 S.Ct. 1637.[4] Thus, the common shareholders contend that any action, specifically the merger, taken by GAC in which Conseco voted its shares is void.

The defendants counter with several arguments regarding why the trial court's finding that the Control Shares Acquisition Statute does not apply is correct. The most compelling argument is that the statute was intended to disenfranchise control shares in a hostile takeover or similar transaction in which there is a shift to being an entity dominated by a single shareholder or group of shareholders. Such intention is manifested in the Official Comments, and quoted above: the purpose of the Statute is to give shareholders a right to vote on "a potentially fundamental *change* in the nature of their corporation namely, its *shift* to being an entity in which *a single shareholder acquires* a significant level of dominance...." Official Introductory Comment to Ind.Code chapter 23–1–42 (emphasis added). *See also CTS Corp.*, 481 U.S. at 82–83, 107 S.Ct. 1637 ("The Indiana Act operates on the assumption ... that independent shareholders faced with tender offers often are at a disadvantage. By allowing such shareholders to vote as a group, the Act protects them from the coercive aspects of some tender offers.").

---

4. It should be noted that *CTS Corp.,* which dealt primarily with the constitutionality of Indiana's Control Share Acquisition Statute, is the only reported case to discuss the statute.

Even assuming that the facts as alleged in the common shareholders' complaint are true, they do not support application of the Control Shares Acquisition Statute. It is not as though Conseco acquired small amounts of stock from various shareholders to amass a large block of stock which had not previously resided in the hands of a single shareholder. Rather, Conseco acquired a large block of stock which already existed. Thus, there was no change in the nature of GAC when Conseco acquired its stock: prior to Conseco's acquisition, the Algood family had controlled the corporation. Conseco's acquisition of shares did not *shift* GAC to being a corporation dominated by a single shareholder. Instead, GAC has always been dominated by a single shareholder. Further, Conseco's acquisition did not put the common shareholders at a disadvantage. The common shareholders had always been at a disadvantage when it came to governance of GAC because of the concentration of GAC stock in Algood family members' hands. Because there was no fundamental change in the nature of GAC when Conseco acquired its shares, there was no violation of the Control Shares Acquisition Statute, and the trial court did not err in dismissing Count XI of the common shareholders' complaint.

## II. Summary Judgment on Breach of Fiduciary Duty Claims

The common shareholders also contend that the trial court erred in granting summary judgment for the defendants on Counts I through X of their complaint. They contend that the trial court's conclusions that the Dissenters' Rights Statute provides their exclusive remedy and that the action is a derivative one which should have been brought by GAC are erroneous.

### A. Standard of Review

■ Our standard of review of a summary judgment order is well-settled: summary judgment is appropriate if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is enti-

tled to judgment as a matter of law." Ind. Trial Rule 56(C). Relying on specifically designated evidence, the moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *State Farm Fire & Cas. Co. v. T.B. ex rel. Bruce*, 728 N.E.2d 919, 922 (Ind.Ct.App. 2000). If the moving party meets these two requirements, the burden shifts to the nonmovant to set forth specifically designated facts showing that there is a genuine issue for trial. *Id.* A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Gilman v. Hohman*, 725 N.E.2d 425, 428 (Ind.Ct.App.2000), *trans. denied.* Even if the facts are undisputed, summary judgment is inappropriate where the record reveals an incorrect application of the law to the facts. *Id.*

■ On appeal, we are bound by the same standard as the trial court, and we consider only those matters which were designated at the summary judgment stage. *Interstate Cold Storage v. General Motors Corp.*, 720 N.E.2d 727, 730 (Ind.Ct. App.1999), *trans. denied.* We do not reweigh the evidence, but we liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact for trial. *Estate of Hofgesang v. Hansford*, 714 N.E.2d 1213, 1216 (Ind.Ct.App.1999). The party that lost in the trial court has the burden to persuade the appellate court that the trial court erred. *Id.* Specific findings and conclusions by the trial court are not required, and although they offer valuable insight into the rationale for the judgment and facilitate our review, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment. *Bernstein v. Glavin*, 725 N.E.2d 455, 458 (Ind.Ct.App.2000), *trans.*

*denied.* A grant of summary judgment may be affirmed upon any theory supported by the designated materials. *Id.*

### B. Dissenters' Rights Statute

The trial court found that Counts I through X of the common shareholders' complaint were barred by the Dissenters' Rights Statute. Ind.Code §§ 23–1–44 *et seq.* Indiana Code section 23–1–44–8(a) provides that a shareholder is entitled both to dissent from the consummation of a plan of merger to which the corporation is a party, and to obtain the payment of the fair value of the shareholder's shares in the event of the consummation of the merger.

If proposed corporate action is submitted to a vote at a shareholder meeting, as the merger herein was, the meeting notice must state that shareholders are entitled to dissent. Ind.Code § 23–1–44–10(a). Any shareholder wishing to assert dissenters' rights must deliver to the corporation before the vote written notice of his or her intent to demand payment for his or her shares and must not vote those shares in favor of the proposed action. Ind.Code § 23–1–44–11(a). A shareholder who does not deliver this written notice is not entitled to payment. Ind.Code § 23–1–44–11(b). If the proposed action is authorized, then the corporation must deliver within ten days after the action was taken a written dissenters' notice to a shareholder who has delivered the written notice of intent to dissent. Ind.Code § 23–1–44–12(b). In order to obtain payment for his shares, the shareholder who receives such notice must demand payment, certify ownership of his shares, and deposit his shareholder's certificates in accordance with the terms of the notice. Ind.Code § 23–1–44–13(a).[5] A shareholder who fails to do so is not entitled to payment for his or her shares and is considered to have voted his or her shares in favor of the corporate action. Ind.Code § 23–1–44–13(c). The corporation must then pay each dissenter the amount the corporation estimates to be the fair value of his or her shares. Ind. Code § 23–1–44–15(a). If the dissenter believes that the amount the corporation paid is less than the fair value of the shares, the dissenter may notify the corporation in writing within thirty days of the corporation's payment of his or her own estimate of the fair value and demand payment of that amount. Ind.Code § 23–1–44–18(a). Failure to make a written demand within thirty days waives the right to demand additional compensation for shares. Ind.Code § 23–1–44–18(b).

If the dissenter's demand for payment then remains unsettled, the corporation must commence a proceeding within sixty days after payment was demanded and ask the court to determine the fair value. If the corporation fails to do so, it must pay the amount demanded by the dissenter. Ind.Code § 23–1–44–19(a). All dissenters whose demands have not been settled are to be named parties. Ind.Code § 23–1–44–19(c). Section 23–1–44–8(c) (the "exclusivity provision") provides that a shareholder entitled to dissent and obtain payment for the shareholder's share "may not challenge the corporate action creating ... the shareholder's entitlement." Thus, a dissenter is barred from bringing a derivative action against the corporation after his or her dissenters' rights have arisen, but the appraisal proceeding affords the dissenter the opportunity not only to have the fair value of his or her shares to be determined, but also to argue any breach of fiduciary duty or fraud claims. *See Fleming v. International Pizza Supply Corp.,* 707 N.E.2d 1033, 1037–38 (Ind. Ct.App.1999).

---

5. It was noted at oral argument that, in addition to this litigation, there is also an appraisal proceeding in progress, as well as an additional lawsuit between shareholders who were excluded from the appraisal proceeding, including the common shareholders herein, and GAC concerning whether or not those shareholders followed all the requirements necessary to be included in the appraisal proceeding.

The common shareholders acknowledge the exclusivity provision of the Dissenters' Rights Statute, but argue that it should not apply in this case for several reasons. First, they argue that it should not apply because the purported merger was in violation of the Indiana Control Share Acquisition Statute, and therefore void. Next, they argue that it should not apply because of "false and misleading statements" which tainted the approval process and again, rendered the purported merger void. Finally, they argue that it should not apply for public policy reasons: to apply the Dissenters' Rights statute would be to "sanction" the defendants' wrongdoing. Each of these arguments will be addressed in turn.

### 1. Exclusivity Provision

In *Fleming v. Int'l Pizza Supply Corp.*, 676 N.E.2d 1051 (Ind.1997), our supreme court, in interpreting Indiana Code section 23–1–44–8, held that "in a merger or asset sale, the exclusive remedy available to a shareholder seeking payment for the value of the shareholder's shares is the statutory appraisal procedure." *Id.* at 1056. The court concluded that the legislature, in promulgating the current version of Indiana Code section 23–1–44–8, stated its intention to so limit a dissenting shareholder's remedy. *Id.* at 1057. In reaching that conclusion, the court noted that the previous version of the exclusivity provision provided:

> Every shareholder who did not vote in favor of such merger ... and who does not object in writing and demand payment of the value of his shares at the time and in the manner stated in the section *shall be conclusively presumed to have assented* to such merger....

Ind.Code § 23–1–5–7(c) (emphasis added). This section was interpreted in *Gabhart v. Gabhart*, 267 Ind. 370, 370 N.E.2d 345 (1977), to establish the exclusive remedy only for mergers with a "valid purpose." Absent a "valid purpose," the court held that minority shareholders were not limited to the statutory appraisal rights. *Id.* at

356. Several years after *Gabhart*, a special commission which had been created to study Indiana's existing General Corporation Act, Ind.Code §§ 23–1–1–1 *et seq.*, recommended that it be replaced with the 1984 version of the Revised Model Business Corporation Act (the "RMA") published by a section of the American Bar Association. *Fleming*, 676 N.E.2d at 1054. The legislature then adopted Indiana's current Business Corporation Law, Ind.Code §§ 23–1–17–1 *et seq.* (the "BCL"), and authorized the publishing of the "Official Comments," which can "be consulted by the courts to determine the underlying reasons, purposes, and policies of the BCL" and "be used as a guide in its construction and application." Ind.Code § 23–1–17–5.

However, in adopting the BCL, the legislature modified the RMA's exclusivity provision. The RMA version provides:

> A shareholder entitled to dissent and obtain payment for his shares under this chapter may not challenge the corporate action creating his entitlement *unless the action is unlawful or fraudulent* with respect to the shareholder or the corporation.

RMA § 13.02(b) (1984) (emphasis added). Indiana's version of the exclusivity provision provides that "a shareholder who is entitled to dissent and obtain payment for the shareholder's shares ... *may not challenge the corporate action* creating ... the shareholder's entitlement." Ind.Code § 23–1–44–8(c) (emphasis added). The Official Comment to this subsection provides:

> Subsection (c), which establishes the exclusivity of Chapter 44's dissenters' rights remedies, deletes RMA language stating that such rights are exclusive "unless the action is unlawful or fraudulent with respect to the shareholder or the corporation." Deletion of this language reflects a conscious response to the Indiana Supreme Court's decision in *Gabhart v. Gabhart*, 267 Ind. 370, 370 N.E.2d 345 (1972) [sic].

...

Given the potential for disruption of corporate transactions where a *Gabhart* rule applied to the BCL, the General Assembly adopted subsection (c) as a categorical statutory rule that shareholders entitled to dissenters' rights may not challenge the corporate action creating that entitlement. Hence, the kind of minority shareholder challenge to corporate action permitted by *Gabhart* under IC 23–1–5–7(c) is not permitted under subsection (c).

Official Comments to Ind.Code § 23–1–44–8.

The court in *Fleming* went on to hold that a dissenting shareholder's breach of fiduciary duty or fraud claims must be litigated within the appraisal proceeding: the "legislature meant to limit a dissenting shareholder seeking payment for the value of the shareholder's shares to the statutory appraisal procedure [but] did not foreclose the ability of dissenting shareholders to litigate their breach of fiduciary duty or fraud claims within the appraisal proceeding." 676 N.E.2d at 1057. In part, this decision was based upon the right of a dissenting shareholder to obtain payment of the "fair value" of his or her shares: "the expression 'corporate action to which the dissenter objects' as used in Ind.Code 23–1–44–3 includes not only the merger . . . itself but genuine issues of breach of fiduciary duty and fraud affecting the value of the shares at the time of the transaction." *Id.* at 1058.

### 2. Application to This Case

The common shareholders contend that the Dissenters' Rights Statute does not apply in this case because the purported merger was void. If there was no merger, then there was no corporate action to trigger the Dissenters' Rights Statute, and the exclusivity provision does not bar their current action. They also contend that even if the Dissenters' Rights Statute does apply, it should not represent their exclusive remedy in this case for public policy reasons.

#### a. Control Shares Acquisition Statute

The common shareholders first contend that the purported merger was void because it violates the Indiana Control Shares Acquisition Statute. However, as has already been decided above, the Control Shares Acquisition Statute is not applicable in this context. Thus, there was no violation of the Statute, and the merger is not void for this reason.

#### b. False and Misleading Statement in Merger Process

The common shareholders also contend that the merger was void because any vote by the shareholders following the issuance of a proxy statement permeated with false and misleading statements "cannot constitute the valid action of GAC." Brief of Appellants at 18. The common shareholders identify five false statements and corresponding concealed facts which they allege are fatal to the purported merger. They cite no caselaw and make no argument beyond their own assertions that such conduct should render the merger void. The defendants do not directly respond to this argument, and our research reveals no cases addressing the nature of a merger when fraud in the process has been alleged.

 The common shareholders' claims in this respect are basically allegations of fraud on the shareholders receiving the proxy statement. Under the RMA version of the exclusivity provision, which restricts a dissenter's right to challenge the corporate action "*unless* the action is unlawful or fraudulent," the common shareholders' claims may have supported a separate cause of action. If Indiana's rejection of this language in favor of an exclusivity provision which restricts a dissenter's right to challenge the corporate action without limitation is to have any meaning, however, these claims can and must be litigated as part of the appraisal process. Thus, we hold that fraud does not necessarily void a merger, but only provides a cause of action for the common sharehold-

ers within the context of the Dissenters' Rights Statute process.

### c. Public Policy

Finally, the common shareholders allege that the Dissenters' Rights Statute should not apply in this situation for public policy reasons. "The basic lawlessness and disregard for the property rights and voting rights of [the common shareholders] that form the core of Conseco's and GAC's actions in this case are not merely obnoxious they are heinous ... [and] ... far removed from what the legislature had in mind when it enacted the Dissent Statute ." Brief of Appellant at 22–23. Thus, the common shareholders argue that we should not sanction such behavior by limiting their remedy to an appraisal proceeding.

We recognize the difficulties inherent in the Dissenters' Rights Statute, which contains numerous deadlines and requirements which a shareholder intending to assert his or her dissenters' rights must meet in order to be entitled to payment for his or her shares and which puts the appraisal proceeding in the hands of the corporation when the corporation clearly has an interest adverse to the interest of the dissenters.[6] However, the statute also balances the shareholders' obligations to protect their dissenters' rights by requiring the corporation to notify them on no less than three occasions of their rights and the steps they must take to protect them. Thus, no shareholder can be said to have been "blindsided" by the require-

ments of the statute if the corporation fulfills its obligations under the statute. Also, the purpose of requiring the corporation to initiate the appraisal proceeding seems clear: to consolidate all dissenters' claims in one proceeding and keep the corporation from becoming involved in multiple litigation over the same corporate action. Although at first blush, it may appear that there is a conflict of interest in requiring the corporation to initiate the appraisal proceeding and name as defendants those very shareholders who would otherwise seek to sue the corporation, the statute contains sufficient safeguards to keep this from being so. If the corporation fails to initiate the action or fails to name all shareholders who have properly preserved their claim, then the corporation will be required to pay those shareholders what they have demanded.[7] Thus, there is no benefit to the corporation if it fails to follow the requirements of the statute.

"The general purpose of an appraisal statute 'is to protect the property rights of dissenting shareholders from actions by majority shareholders which alter the character of their investment.' " *Settles v. Leslie*, 701 N.E.2d 849, 856 (Ind.Ct.App. 1998) (quoting 12B Fletcher Cyclopedia of Corporations. § 5906.10 (1993)). Our supreme court in *Fleming* stated, "While we acknowledge that the appraisal remedy does not provide for the individual liability of majority shareholders ... we believe that those are the policy choices made by the legislature in adopting Ind.Code § 23–1–44–8(c) and are clearly within the legislature's prerogative." 676 N.E.2d at 1058.

---

6. We are especially sensitive to that in this case, wherein GAC did not name the common shareholders as defendants in the appraisal proceeding, and the common shareholders have had to initiate additional litigation regarding their right to be a part of that proceeding. Thus, although we hold that the common shareholders are barred by the exclusivity provision of the Dissenters' Rights Statute from bringing their claims in an independent action, we are mindful that the common shareholders may be left without a remedy for their alleged injury if they are not allowed into the appraisal proceeding.

7. For this reason, it may be the better course of action for a shareholder who believes he was wrongly left out of the appraisal proceeding to intervene in that action, rather than instituting an entirely new action to determine whether or not he should have been named as a party to the appraisal proceeding. If the shareholder intervenes, all claims related to the appraisal proceeding could be determined in one proceeding.

Thus, public policy has already been considered in determining that the very claims the common shareholders seek to assert against GAC must be litigated within the context of the appraisal proceeding, and we decline to hold otherwise.

## C. Derivative v. Direct Action

The trial court also found that, in the alternative, Counts 1 through 10 of the common shareholders' complaint were barred because they are derivative and can not be asserted in a direct action against GAC. Because the common shareholders did not comply with the requirements of Indiana Code chapter 23-1-32, dealing with derivative proceedings, and because the complaint does not support the application of an exception to the general rule requiring derivative actions in this case, the trial court found that Counts 1 through 10 also failed as a matter of law for this reason. In the event we were to hold that the Dissenters' Rights Statute does *not* represent the common shareholders' exclusive remedy, the trial court's alternate disposition concludes that their action is nonetheless barred because their remedy would be a derivative action, not a direct action.[8] Because we have held that the Dissenters' Rights Statute applies in this situation, and that the trial court properly granted summary judgment on that ground, the trial court's alternative disposition based upon the derivative nature of the action is superfluous and we need not discuss it. *See Bernstein,* 725 N.E.2d at 458 (stating that a grant of summary judgment may be affirmed on any supportable theory).

*Conclusion*

We hold that the Control Shares Acquisition Statute does not apply to a situation such as that before us, in which a controlling block of shares was transferred from one entity, the Algood family, to another, Conseco, and the trial court properly dismissed the common shareholders' claim based upon an alleged violation of this statute. Further, the Dissenters' Rights Statute provides the common shareholders with their exclusive remedy for the breach of fiduciary duty and fraud claims they have attempted to assert in this independent action. Thus, the trial court properly entered summary judgment on those claims for the defendants. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

MATHIAS, J., and MATTINGLY, J., concur.

---

8. We note that the supreme court has stated that it believes it is "clear that the [BCL] did not intend to restrict any claims of wrongdoing that a corporation or shareholder brings *before the corporate action creating dissenters' rights occurs.*" *Fleming,* 676 N.E.2d at 1057 n. 9 (emphasis added). Thus, if the common shareholders had filed a derivative action before the occurrence of the corporate action creating their dissenters' rights, it is possible that action could go forward. The Dissenters' Rights statute states that a shareholder is entitled to dissent from the *"consummation* of a plan of merger." Ind.Code § 23–1–44–

8(a)(1). The merger was not consummated until *after* the common shareholders filed the instant complaint. Had the common shareholders complied with the dictates of Indiana Code chapter 23–1–32 and filed a derivative action, it may well have been possible to go forward. However, they seem to concede that their complaint is *not* a derivative action. Thus, if we hold that a direct action by the shareholders is not allowed in this situation, then the "exception" announced in *Fleming* does not save the common shareholders' claims, either.