**Richard OLIVER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 71S00–9912–CR–699.**

Supreme Court of Indiana.

Sept. 28, 2001.

---

Brian J. May, South Bend, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

RUCKER, Justice.

A jury convicted Richard Oliver of murder in the stabbing death of Donald Kime. The jury also adjudged Oliver a habitual offender. The trial court sentenced him to sixty-five years for the murder enhanced by thirty years for the habitual offender adjudication. In this direct appeal, Oliver raises five issues for our review, which we reorder and rephrase as follows: (1) did the trial court err in denying Oliver's motion for a mistrial; (2) did the trial court err by admitting into evidence the details of one of Oliver's prior convictions; (3) did the trial court err by admitting into evidence an autopsy photograph; (4) is the evidence sufficient to sustain the conviction; and (5) did the trial court err during the habitual offender phase of trial by improperly admitting certain documents into evidence.

We affirm.

### Facts

The body of sixty-eight-year-old Donald Kime was discovered in his South Bend apartment on December 27, 1997. The ensuing investigation led to Oliver. In a videotaped interview with police, Oliver declared that on December 26, 1997, he was present in Mr. Kime's home when Mr. Kime began making sexual advances toward him. According to Oliver, a scuffle

ensued, and Oliver "just stuck the knife out, and it hit him." R. at 715. A pathologist testified that Mr. Kime suffered three stab wounds, two were superficial and the third penetrated his sternum and aorta. According to the pathologist, "a lot of force" was required to cut through the sternum. R. at 462. The cause of death was blood loss from the perforated aorta.

A jury convicted Oliver of murder and adjudged him a habitual offender. The trial court sentenced Oliver to a total term of ninety-five years. This direct appeal followed. Additional facts are set forth below where relevant.

***Discussion***

I.

Oliver first contends the trial court erred in denying his motion for a mistrial. The facts are these. During voir dire, prospective juror Juan Rivera mentioned that he had heard of Oliver's prior convictions:

JUROR RIVERA: Yeah, all the press and the media, they got like prior convictions, and they slammed him really bad.

THE COURT: They allege all kinds of things, and they may be very wrong. You understand? They often are. But can you put that aside, or are you going to—is that sort of a stain there that you can't really get around.

JUROR RIVERA: Well, they mentioned that he was a—.

THE COURT: I just want to know what you think?

JUROR RIVERA: I don't know, I don't know if I could be objective, you know.

THE COURT: Well, okay. I don't know if the lawyers want to talk to you further. But I appreciate you telling us that.

R. at 343–44. Defense counsel moved for a mistrial because of Rivera's statements:

MR. DRENDALL: Generally, we would move for a mistrial and move to excuse the panel. Mr. Rivera started to say that he had read that actually he had said that he had read that Mr. Oliver had beat somebody up and he went on to begin to say that he was a habitual.

THE COURT: I don't think he got it out. You're trained to listen for that and I'm trained to listen for that, but I'll bet this jury didn't hear it.

R. at 357. The trial court denied the motion but excused Rivera for cause. Later, the trial court asked the remaining prospective jurors whether anyone had a problem deciding the case on the evidence presented at trial as opposed to anything heard in the press or during voir dire. The prospective jurors assured the trial court their decision would be based on the evidence presented at trial. Defense counsel renewed his motion for a mistrial, which the trial court again denied. Oliver claims error.

▪ A mistrial is an extreme remedy granted only when no other method can rectify the situation. *Jackson v. State*, 728 N.E.2d 147, 151 (Ind.2000). The denial of a mistrial lies within the sound discretion of the trial court, and reversal is required only if the defendant demonstrates that he was so prejudiced that he was placed in a position of grave peril. *Gill v. State*, 730 N.E.2d 709, 712 (Ind.2000). The gravity of peril is measured by the probable persuasive effect on the jury's decision. *Id.* The trial judge is in the best position to gauge the surrounding circumstances and the potential impact on the jury when deciding whether a mistrial is appropriate. *Id.*

▪ The facts of this case are remarkably similar to those in *Leach v. State*, 699 N.E.2d 641 (Ind.1998). In that case a prospective juror declared during voir dire: "[t]he only thing that would bother

me is ... the second charge that the State has against the gentlemen [sic] being a Habitual Criminal." *Id.* at 644 (quotation omitted). Defense counsel moved for a mistrial, which the trial court denied. On appeal, this Court determined that because the comment was limited and the evidence against the defendant was overwhelming, the trial court did not err in denying the motion for a mistrial. *Id.* at 645.

Likewise, Rivera's comment regarding Oliver's criminal history was limited, and the evidence against Oliver is overwhelming—he admitted to the stabbing. Also, Oliver has neither alleged nor demonstrated that the trial court's inquiry of the remaining prospective jurors was inadequate. We conclude the trial court did not err in denying Oliver's motion for a mistrial.

## II.

Oliver next contends the trial court abused its discretion by admitting evidence concerning the details of one of his prior convictions. We disagree. The record shows that Oliver took the stand in his own defense and admitted stabbing Mr. Kime. In an apparent effort to bolster his claim of self-defense and to show that the use of a knife was his only reasonable alternative, Oliver talked about his size and weight relative to Mr. Kime's size and weight. The left-handed Oliver also claimed that because of a shooting incident that resulted in an injury, he now possessed limited strength in his left hand and no strength in his right hand. Oliver testified, "I can't fight, I can't really grab a person like I used to do it before I got shot." R. at 779. In a strategic move, Oliver also admitted several convictions including a robbery that was the result of a plea agreement.

Before beginning cross-examination, the State sought a side-bar conference to determine whether the trial court would allow an inquiry into the details of the robbery conviction. Pointing out that the robbery involved force and occurred in May 1998, the State argued that it was entitled to pursue this line of questioning to impeach Oliver's testimony that he had no strength in his right hand and limited strength in his left hand a mere five months earlier. The trial court allowed the inquiry. Over defense counsel's objection, the State proceeded to ask Oliver a series of questions concerning the details of the robbery. The trial court struck those questions not specifically related to Oliver's use of force. Ultimately, Oliver admitted that he struggled with his female victim and robbed her at knifepoint.

■ Generally, when a prior conviction is introduced for impeachment purposes, the details of the conviction may not be explored. *Skaggs v. State,* 260 Ind. 180, 293 N.E.2d 781, 785 (1973); *see also* Ind. Evidence Rule 609(a) (allowing impeachment by evidence of certain "infamous crimes" and crimes involving dishonesty or false statement). Rather, a witness may be questioned only about whether he or she had been previously convicted of a particular crime. *Skaggs,* 293 N.E.2d at 785. However:

> When a party touches upon a subject in direct examination, leaving the trier of fact with a false or misleading impression of the facts related, the direct examiner may be held to have opened the door to the cross examiner to explore the subject fully, even if the matter so brought out on cross examination would have otherwise been inadmissible.

*Tawdul v. State,* 720 N.E.2d 1211, 1217–18 (Ind.Ct.App.1999) (quotations omitted), *trans. denied.*

■ We first observe that even assuming Oliver "opened the door," the question of whether he possessed enough strength

to rob someone five months after he stabbed the victim in this case is only marginally relevant and related to a collateral matter. "A claim of self-defense in a homicide prosecution requires, among other things, that the defendant had a reasonable belief that deadly force was 'necessary to prevent serious bodily injury to himself or a third person or the commission of a forcible felony.'" Taylor v. State, 710 N.E.2d 921, 924 (Ind.1999) (quoting Ind.Code § 35–41–3–2(a)). Whether Oliver possessed the physical strength to rob a female victim on one occasion does not make it more or less probable that he had the physical strength to defend himself against an alleged male attacker on this occasion.

■ Indeed, the State's real motivation can be gleaned from the questions asked on cross-examination. It is apparent the State's strategy was to place before the jury the details of Oliver's previous conviction for the sole purpose of creating the forbidden inference, namely: prior wrongful conduct suggests present guilt. See Byers v. State, 709 N.E.2d 1024, 1026–27 (Ind.1999) (commenting that Indiana Evidence Rule 404(b) is designed to prevent the jury from making the "forbidden inference"). However, Oliver has demonstrated no harm. The record shows that Oliver's counsel objected to each question posed by the State concerning the details of the robbery conviction. The trial court sustained the objections for all questions not relating to Oliver's use of force and ordered the questions stricken from the record. There is a presumption the jury followed the trial court's admonition and that the State's improper questioning played no part in the jury's deliberation. See Heavrin v. State, 675 N.E.2d 1075, 1084 (Ind.1996). As for the use of force, Oliver denied the State's major premise,

namely: that he held down the victim of the robbery with his right hand while wielding a knife with his left hand. And the State offered no evidence in rebuttal on this point. In the end, the State was left with Oliver merely admitting on cross-examination that the robbery involved a struggle and a knife. This can hardly be described as damaging evidence. Trial courts possess broad discretion in ruling on the admissibility of evidence, and we reverse only for abuse of that discretion. Appleton v. State, 740 N.E.2d 122, 124 (Ind.2001); Bacher v. State, 686 N.E.2d 791, 795 (Ind.1997). We find no abuse of discretion here.

### III.

■ Oliver next contends the trial court erred by admitting into evidence an autopsy photograph that depicted Mr. Kime's chest wound measured by a two-inch ruler. He complains the photograph "was not critical to the State's case inasmuch as [defense] counsel admitted in his opening remarks that his client stabbed the victim and he died as a result." Br. of Appellant at 11. Oliver acknowledges that existing case authority permits the introduction of evidence on an issue which one party unilaterally concedes or offers to stipulate. See, e.g., Butler v. State, 647 N.E.2d 631, 634 (Ind.1995) (finding autopsy photographs admissible even though defense counsel admitted in his opening statement that the defendant stabbed the victims and they died as a result). Nevertheless, citing no authority on the point and making no cogent argument in support, Oliver asks this Court to "reconsider the law." Br. of Appellant at 11. We decline.

### IV.

■ Oliver next contends the evidence is insufficient to sustain his murder

conviction. When reviewing a claim of insufficient evidence, we consider only the evidence that supports the verdict and draw all reasonable inferences therefrom. *Johnson v. State*, 743 N.E.2d 755, 757 (Ind. 2001). We do not reweigh the evidence or judge the credibility of the witnesses. *Id.* We uphold a conviction if there is substantial evidence of probative value from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

 The State charged Oliver with murder for the "knowing" killing of Mr. Kime. "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35–41–2–2(b). A knowing killing may be inferred from the use of a deadly weapon in a manner likely to cause death. *Hawkins v. State*, 748 N.E.2d 362, 363 (Ind.2001), *reh'g denied*. The evidence shows that Oliver stabbed Mr. Kime three times, one of which penetrated his sternum and aorta with "a lot of force." R. at 462. Apparently acknowledging the strength of this evidence, Oliver claims "he never intended to kill Donald Kime" and "[t]he jury should have accepted his statement." Br. of Appellant at 13. The jury did not accept Oliver's statement on this point, nor was it bound to do so. The evidence is sufficient to sustain the conviction. We find no error on this issue.

## V.

For his final allegation of error, Oliver contends the trial court erred by admitting into evidence a record of a prior conviction during the habitual offender phase of trial because it was not properly certified. The record shows the State introduced an exhibit detailing Oliver's conviction and sentence for a prior felony offense committed in the State of Missouri. The exhibit consisted of six pages and contained a certification on the first page made by the Corrections Records Manager of the Fulton, Missouri Reception and Diagnostic Center. Oliver argues that the certification on the first page of the exhibit without reference to the total number of pages actually certified is an insufficient authentication of the multi-paged exhibit.

We confronted a similar claim in *Hernandez v. State*, 716 N.E.2d 948 (Ind.1999), *reh'g denied*. The challenged exhibits in that case consisted of a two-page probable cause affidavit containing a certification stamp and signature of the clerk on the first page only and a three-page sentencing order containing a certification stamp and signature of the clerk on the last page only. In each exhibit, the clerk left blank a part of the stamp providing for the total number of pages being certified. Our review of the exhibits revealed that each was a complete, individual document. We concluded "[t]he certification on a single 'page' of either challenged exhibit provided adequate certification for the entirety of each exhibit as the certification placement 'in no way caus[ed] confusion as to the authenticity of the paper.'" *Id.* at 952 (quoting *Chanley v. State*, 583 N.E.2d 126, 131 (Ind. 1991)).

 The same is true here. Oliver's name and inmate number is listed on the first four pages of the six-page exhibit. Additionally, his name is listed on the fifth page and his inmate number is listed on the last page. The trial court properly admitted the exhibit into evidence. *See Kidd v. State*, 738 N.E.2d 1039, 1043–44 (Ind.2000) (finding the trial court did not err in admitting a multi-paged exhibit that contained a certification on the last page only because several pages of the exhibit contained the same cause number), *reh'g denied*. We find no error.

## Conclusion

We affirm the trial court.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.