Malcolm WILSON, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 49S00–0008–CR–468.

Supreme Court of Indiana.

April 16, 2002.

Appeal from the Marion Superior Court; Cause No. 49G04–9903–CF–035473; Patricia J. Gifford, Judge.[1]

Timothy J. Miller, Indianapolis, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

DICKSON, Justice.

The defendant, Malcolm Wilson, was convicted of murder[2] for the 1998 killing of sixteen-year old Shanna Sheese in Indianapolis.[3] His appeal presents four issues, which we will address in the following order: (1) sufficiency of evidence, (2) admission of evidence regarding other bad acts, (3) refusal to give tendered jury instruction, and (4) admission of photographs of the deceased victim's body. We affirm.

## Sufficiency of the Evidence

■ The defendant claims that the evidence was insufficient to convict him of murder. In addressing a claim of insufficient evidence, an appellate court must consider only the probative evidence and reasonable inferences supporting the judgment, without weighing evidence or assessing witness credibility, and determine therefrom whether a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Marcum v. State*, 725 N.E.2d 852, 863 (Ind.2000).

■ Applying this standard, the evidence shows that Shanna Sheese, age 16, was killed by blunt force trauma to the left side of her head. In a conversation with his jail cellmate, a crack cocaine user charged with burglary and theft, the defendant disclosed that he was accused of killing a sixteen-year-old girl; that he dealt drugs and had received several calls to come to what he thought was the scene of "some big money, a big buy," Record at 536; that he found there the girl, who was apparently dead; that he and a companion put her body in his truck to take it to "the drop spot," Record at 535; and that when he arrived at the spot, he then found that she was alive, moving and moaning. The defendant explained to his cellmate, "She know me. . . . She wasn't dead. . . . So, you know, hey, we had to take her out of it." Record at 536. The cellmate further stated that the defendant told him, "The bitch wasn't dead. . . . We had to take her out of it. I had to have my business. You know that." Record at 547. The defendant told his cellmate that his business was "cocaine and beauty salons, hair styling." Record at 546. Another witness testified by deposition that two days or less after the victim's death, he overheard the defendant admitting that he "beat the shit out of her" and then removed her clothes to make it look like a "John or prostitute type of beating." Supp. Record at 13, 15; Record at 490. A few days before learning that the victim was missing, one female witness, one of the defendant's cocaine customers, observed the defendant, his girlfriend, and others in the defendant's pickup truck behind a crack house. When the witness noticed a pair of tennis shoes, pointing upwards as if on a person's feet, protruding from under a tarp on the back of the defendant's truck, the defendant's girlfriend quickly pulled the tarp over the

---

1. The jury trial and substantial portions of the pre-trial proceedings were conducted before the Honorable Mark Renner, Magistrate.

2. Ind.Code § 35–42–1–1.

3. The defendant was originally charged along with Vanessa K. Thompson and Alexa Whedon for the murder of Shanna Sheese. Following severance upon motion of the State, each defendant was tried separately.

shoes and said, "She saw." Record at 335. The defendant responded, "If she did see, she ain't going to say nothing, because if she does then we know where it came from." *Id.* When a police officer sought to speak with the defendant during his investigation, the defendant responded, "You've been listening to those lying bitches." Record at 506. The victim used crack cocaine and frequented crack houses. She was known to associate with the defendant and his girlfriend. About one week before the victim's death, she was seen buying crack cocaine from the defendant, and she still owed the defendant $350 or $375 for crack cocaine previously purchased. Supp. Record at 7, 9; Record at 490. Before her death, witnesses had seen her together with the defendant and his girlfriend, and the defendant had been in a heated argument with the victim a few days before she disappeared. The victim's naked body was found in a vacant lot on the near east side of Indianapolis.

The defendant bases his argument on an alleged inconsistency between the testimony of pathologist John Pless, M.D., and the testimony of the defendant's jail cellmate, Jackie Shockency. The defendant emphasizes Shockency's description of the defendant telling him that upon arrival at the scene of the expected drug buy, the girl was dead and had been hit in the head with a blunt instrument. He argues that Dr. Pless's testimony leads to the conclusion that a single blow killed the victim, but that the defendant's version, as presented by his cellmate, requires a beating severe enough to result in unconsciousness and the appearance of death, regaining consciousness, and a subsequent fatal blow. Urging that these versions are irreconcilable, the defendant argues that this "casts sufficient doubt that Shockency was telling the truth which renders the verdict sufficiently suspect to warrant reversal." Br. of Appellant at 19.

Dr. Pless testified that due to the extensive decomposition of the head, it was "very likely" that the victim was beaten on other parts of her head, and that it was possible that those other injuries could have caused temporary unconsciousness. Record at 456–57, 459, 465–67.

We find no significant differences in the two versions of the cause of death. Furthermore, the evidence that the defendant admitted that he and his companion killed the victim strongly supports the verdict. Considering the evidence and reasonable inferences favorable to the judgment, we conclude that a reasonable jury could have found the defendant guilty of murder beyond a reasonable doubt.

### Admitting Evidence of Other Bad Acts

■ The defendant contends that the trial court erred in allowing the admission of evidence of the defendant's drug and prostitution business. He urges that the trial court permitted admission of extensive evidence of the defendant's other crimes, wrongs, or acts contrary to Indiana Evidence Rule 404(b), and that, even if admissible, its probative value was substantially outweighed by its prejudicial effect in violation of Evidence Rule 403.

This issue was first raised by the defense with respect to the defendant's drug use and dealing in a pre-trial motion heard several months before trial. A transcript of the hearing is not included in the submitted Record, but the substance of the trial court's rulings was reviewed and discussed among the court and counsel immediately before the commencement of trial. The court ruled that, because the use, sale, and distribution of cocaine was a central issue in the events of this case, testimony regarding cocaine use and the defendant's providing cocaine to others would be permitted.

The trial court ruled, however, that some testimony sought to be presented by the State and challenged by the defense would not be permitted. Furthermore, informing counsel of his concern regarding the number of witness talking about cocaine sale and use, Magistrate Renner invited, and counsel provided, further argument. The court's thoughtful consideration is demonstrated in his ruling, which stated in part:

I don't want the appellate court to look back in the future, if that becomes a necessity, and say, "Court, Mr. Renner, you ruled wrong. There was too much of this repetitiveness, and it did tip the balance of 403 against the State and prejudiced and biased the jury against the defendant." I'm sensitive to that. [The prosecutor] has provided me, and I think sufficiently provided me with other reasons why this testimony has to come in. I am happy to provide limiting instructions as best I can, and maybe it will never see the light of day with the appellate court. But I'm going to allow the testimony as we've discussed. Obviously over your objection. Please at the appropriate time object to preserve your record.

Record at 280–81. At this point, the State informed the court that it had just discovered that one of its witnesses had

knowledge regarding the defendant's drug business using girls engaged in prostitution. The defense objected "because it's cumulative" and doesn't contribute "to establishing the relationship of prostitution with my client that the other witnesses can't establish." Record at 284. After further arguments of counsel, the trial court ruled that the State should not question this witness as to the defendant's involvement in prostitution because her information regarding the defendant's connection to prostitution was disclosed to the defense only shortly before trial. Compared with the considerable evidence presented regarding the defendant's involvement with drug dealing, there were few instances in which a witness's testimony tended to directly implicate the defendant as involved in prostitution.[4]

For the most part, defense counsel presented contemporaneous objections at trial raising both Rule 403 and Rule 404(b). Early in the trial, in response to the defendant's objection, the court stated:

Well, with respect to striking the testimony, I'm going to deny that request. However, ladies and gentlemen, I would advise you and instruct you that evidence of other acts or crimes which are not charged or covered by the information are not being offered to prove that

---

4. In responding to a question by the State regarding the relationship between the defendant and a woman known to her as "Vanessa," Margaret Shaffer testified "Vanessa was a prostitute, and she went out for the money to bring back to Malcolm,...." Record at 483. Later, the defendant's cellmate testified that the defendant said that he would use "white girls to deal for him" and that it was common practice for the girls to offer "eight balls" of cocaine with the suggestion that "we can be together" for $110.00, with the money going to the dealer, not the women. Record at 539–40. Finally a witness testified by deposition that the relationship between defendant and Vanessa "was more like pimp/prosti-

tute type deal." Supp. Record at 29; Record at 490. We note that in the closing arguments, only the defense mentioned the defendant's involvement in prostitution. The State did not mention prostitution but made general references to the "lifestyle" of the defendant, arguing, for example: "It sets out the whole picture, and it tells you that this man had something he had to protect. He had to take care of his business." Record at 625. The defense began its closing argument with: "Ladies and gentlemen, you've heard a lot of witnesses, and most of them testified that Malcolm Wilson was involved in dealing drugs and that he was running prostitutes." Record at 630.

the defendant acted in conformity therewith. In other words, they're not being offered to show that he is a bad person or that he is a criminal. There is the need at times to present evidence of other wrongs or bad acts to give the jury some context or some sense of the surrounding facts and circumstances. That is why this testimony is being offered regarding some alleged events in which you may find that the defendant was involved. They are not to be considered by you to prove that he was a bad person nor that he committed these acts. They are simply—the evidence is simply being offered to give you some background, some context in what we sometimes describe as the res gestae, or the body of the events, the body of the circumstances to help explain what was going on. And with that, please keep in mind any time that certain testimony is given by this witness or others, that it's not for the purpose of showing bad character or that Malcolm Wilson was a bad person.

Record at 332. When overruling subsequent objections, the trial court repeatedly admonished the jury substantially in the following manner:

Again, ladies and gentlemen, please recall my earlier instruction. It's not being offered to prove or to show that the defendant was a bad person or in fact that he was guilty or engaged in other illegal or improper conduct, just to give you some background and some sense of the surrounding circumstances.

Record at 355. In response to the defendant's Rule 403 objections, the trial court's rulings generally expressed the following analysis:

Again we have discussed and argued this previously. The court has balanced the probative evidence and the probativeness of the testimony with the prejudice, and while the court acknowledges some prejudice, the court finds that in balance, the probative nature of this testimony giving this jury some context and background surrounding the alleged events is critical, and for that reason will deny your motion.

Record at 333.

■ In assessing admissibility of 404(b) evidence a trial court must "(1) determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403." *Ortiz v. State*, 716 N.E.2d 345, 350 (Ind.1999)(citing *Hicks v. State*, 690 N.E.2d 215, 221 (Ind.1997)). Evidence of motive is always relevant in the proof of a crime. *Id.* The trial court has discretionary power on the admission of evidence, and its decisions are reviewed only for an abuse of that discretion. *Rubalcada v. State*, 731 N.E.2d 1015, 1023 (Ind.2000).

The defendant argues that the admission of his drug dealing and prostitution-related activities served only to prejudice the jury against him and to distract them from their task of weighing the evidence against him on the charge of murder. Concluding his argument that Evidence Rule 403 and 404(b) were violated, he asserts that "the jury heard testimony that Malcolm Wilson, a black man, was preying on young white women to slake his passions and to send them into the night to enrich him through the sale of cocaine and their bodies." Br. of Appellant at 12.

Because there was evidence that the defendant admitted that he and his companion "had to take her out of it" to protect his business, and because evidence of the defendant's other crimes, wrongs or acts were necessary for the jury to understand the relationships between the victim,

various witnesses, and the defendant, we find that the admission of the challenged evidence did not violate Rule 404(b), particularly in light of the trial court's repeated and thorough jury admonishments limiting the use of the evidence. As to Rule 403, we find that the trial court clearly recognized and carefully evaluated the probative value of the disputed evidence and the danger of unfair prejudice. We decline to find abuse of discretion.

### Involuntary Manslaughter Instruction

The defendant contends that the trial court erroneously refused to give his tendered jury instruction on involuntary manslaughter as a lesser-included offense of murder.

■ When a defendant requests an instruction covering a lesser-included offense, a trial court applies the three-part analysis set forth in *Wright v. State*, 658 N.E.2d 563, 566–67 (Ind.1995). The first two parts require the trial court to determine whether the offense is either inherently or factually included in the charged offense. *Id.* If so, the trial court must determine whether there is a serious evidentiary dispute regarding any element that distinguishes the two offenses. *Id.* at 567; *see also Brown v. State*, 703 N.E.2d 1010, 1019 (Ind.1998). *Wright* held that "if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense." *Wright*, 658 N.E.2d at 567. Where a trial court makes such a finding, its rejection of a tendered instruction is

reviewed for an abuse of discretion.[5] *Brown*, 703 N.E.2d at 1019.

■ At trial, the defense specifically argued its claimed evidentiary dispute, and the trial court, after arguments of counsel, ruled:

> Well, I'm very sensitive to lesser included offenses and the instructions thereon, but I am making the decision that I don't find sufficient disagreement in the facts that have been presented to where there's any serious evidentiary dispute as to what offense was committed—by whom is at issue—but not with the evidence that's in front of this court. I'm going to decline to give the tendered involuntary manslaughter instruction. And, as I said, it's based on that element, whether there's a serious evidentiary dispute. The court simply doesn't find in the manner of death there being a serious evidentiary dispute as to whether this was anything other than a knowing killing of this young woman. So I would show that the record has been made. I am not giving this instruction.

Record at 610–11.

■ Involuntary manslaughter is not an inherently included lesser offense of murder, but it may be a "factually included" lesser offense if, as here, the charging instrument alleges that a battery accomplished the killing. *Evans v. State*, 727 N.E.2d 1072, 1081 (Ind.2000)(citing *Wright*, 658 N.E.2d at 569–70). "The only element distinguishing murder from involuntary manslaughter is what the defendant intended to do—batter or kill."

**5.** If a trial court rejects a tendered lesser-included offense instruction and the record provides "neither a finding that there is no serious evidentiary dispute nor a specific claim from the defendant as to the nature of that dispute, the standard of review is an abuse of discretion." *Brown*, 703 N.E.2d at 1020. Where the defendant at trial identifies a specific evidentiary dispute and the trial court makes no express finding, de novo review is the appropriate standard of review. *Id.*

*McEwen v. State,* 695 N.E.2d 79, 86 (Ind. 1998).

The defendant contends that an evidentiary dispute exists here because of three evidentiary scenarios he claims are inconsistent. First, one witness testified that he heard the defendant admit beating the victim to the point of unconsciousness, but that this admission did not mention death. Second, another witness testified that while in jail, the defendant said that someone had hit the victim with a blunt instrument before he arrived, that he put her in his truck, and that when her movements indicated she was still alive, "he [took] her out of it." Third, the testimony of the pathologist and the photographs of the victim's body provide evidence that she died from a blunt force applied to the side of her head. The defendant argues that because of the evidentiary dispute created by this evidence, the trial court should have given his tendered instruction on involuntary manslaughter, a class C felony.

A person knowingly kills when he is aware of a high probability that he is engaged in killing. *See* Ind.Code § 35–41–2–2; *Lehman v. State,* 730 N.E.2d 701, 704 (Ind.2000). We agree with the trial court that this evidence does not raise a serious evidentiary dispute as to whether the killing was done knowingly. The trial court did not abuse its discretion in denying the defendant's tendered instruction on involuntary manslaughter as a lesser-included offense.

### Photographs of Victim's Body

The defendant contends that the trial court erred in allowing the admission of photographs of the victim taken immediately before the autopsy as their prejudicial effect outweighed their probative value. The applicable standard of review is:

> Because the admission and exclusion of evidence falls within the sound discretion of the trial court, this Court reviews the admission of photographic evidence only for abuse of discretion. *Byers v. State,* 709 N.E.2d 1024, 1028 (Ind.1999); *Amburgey v. State,* 696 N.E.2d 44, 45 (Ind.1998). Relevant evidence, including photographs, may be excluded only if its probative value is substantially outweighed by the danger of unfair prejudice. Ind.Evidence Rule 403; *Byers,* 709 N.E.2d at 1028. "Even gory and revolting photographs may be admissible as long as they are relevant to some material issue or show scenes that a witness could describe orally." *Amburgey,* 696 N.E.2d at 45; *see also Byers,* 709 N.E.2d at 1028. Photographs, even those gruesome in nature, are admissible if they act as interpretative aids for the jury and have strong probative value. *Spencer v. State,* 703 N.E.2d 1053, 1057 (Ind.1999); *Robinson v. State,* 693 N.E.2d 548, 553 (Ind.1998).

*Swingley v. State,* 739 N.E.2d 132, 133 (Ind.2000).

At issue are three photographs, State's Exhibits 7, 8, and 9. The defendant argues that only State's Exhibit 7 was relevant and that the probative value of all three photographs was substantially outweighed by their prejudicial effect. The photographs depict the fracture to the left side of the victim's head; the extensive decomposition of her face; and a view of her neck and upper torso area. Dr. Pless explained that the areas of facial decomposition shown in State's Exhibit 8 are consistent with the victim being beaten in areas other than her fatal skull fracture. He described the injuries shown in State's Exhibit 9 as indicating that "some sort of pressure was applied around the neck." Record at 457.

These exhibits, although unpleasant, were relevant to material issues and to the testimony of the pathologist. We decline

to find abuse of discretion by the trial court in admitting them over the defendant's objections.

## Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and SULLIVAN, and BOEHM, JJ., concur. RUCKER, J., concurs in result.