**Dawn Elizabeth McDOWELL, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 34A05–0606–CR–289.

Court of Appeals of Indiana.

Aug. 31, 2007.

690

Brent R. Dechert, Deputy Public Defender, Kokomo, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Dawn McDowell appeals her conviction of and sentence for voluntary manslaughter, a Class A felony.[1] She questions whether the evidence was sufficient to support her conviction, whether the court abused its discretion by admitting evidence or by prohibiting the re-opening of McDowell's case, whether the court erred by giving a jury instruction regarding intent to kill, and whether her sentence is erroneous. We affirm.

## FACTS AND PROCEDURAL HISTORY

In the spring of 2003, McDowell was living at a campground in Kokomo with her boyfriend, Christopher Crume. On June 24, 2003, they decided to have a "two day birthday party." (Tr. at 531.) They visited houses belonging to a number of their friends, and both of them drank alcohol during the evening and night of June 24 and the early morning hours of June 25. At the final house they visited, McDowell and Crume argued about McDowell's interactions with an ex-boyfriend. Eventually they left together to return to the campground.

Crume was driving himself and McDowell back to the campground when they again began to argue. McDowell insisted Crume stop the car to let her out. When he refused, she rolled down her window and waved her arms to get the attention of persons in passing cars. At some point, McDowell took a paring knife from her purse and put it in the waistband of her clothing. When McDowell tried to exit the moving car, Crume grabbed her by the hair, scratched her face, and pulled her back into the car. McDowell then stabbed Crume in the neck with the paring knife.

Crume drove them to a trailer park where his nieces live and went to their trailer for help. Paramedics found Crume had a one-inch cut on the side of his neck. Crume was taken to a hospital in Kokomo and then flown by helicopter to a hospital in Indianapolis. There, surgeons repaired a number of blood vessels and damage to his esophagus. It appeared Crume would recover from his injuries, but he died on July 1, 2006, when a blood clot in the injured portion of his neck broke loose, causing his lungs to fill with blood.

The State charged McDowell with voluntary manslaughter, a Class A felony; involuntary manslaughter, a Class C felony;[2] aggravated battery, a Class B felony;[3] and battery, a Class A misdemeanor.[4] McDowell filed notice that she would claim self-defense and mental disease or defect. After trial, a jury found her guilty of all four charges. To avoid a double jeopardy violation, the court vacated all her convictions except for voluntary manslaughter. The court found the aggravators outweighed the mitigators and sentenced McDowell to forty years, with five suspended to supervised probation.

## DISCUSSION AND DECISION

### 1. *Admission of Tape Recordings*

■ The State offered into evidence messages McDowell left on the answering

1. Ind.Code § 35–42–1–3.

2. Ind.Code § 35–42–1–4(c)(2).

3. Ind.Code § 35–42–2–1.5.

4. Ind.Code § 35–42–2–1.3.

machine of her ex-husband, James McDowell (hereinafter "James"), three months before the crime charged herein and recordings of telephone conversations McDowell had with James about the same time. Over McDowell's objection, the court held the tapes were admissible.

■ A trial court has discretion to exclude or admit evidence, and we review its decision only for an abuse of that discretion. *Wilson v. State*, 765 N.E.2d 1265, 1270 (Ind.2002). When determining whether evidence is admissible under Ind. Evidence Rule 404(b), a court must determine whether "the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act," *id.*, and then determine whether the probative value of the evidence outweighs its prejudicial effect under Evid. R. 403. *Id.*

McDowell's defense was that she did not intend to kill Crume. Rather, she overreacted to his attempts to keep her in the car because she has post-traumatic stress disorder from being severely abused by James for a number of years. Numerous witnesses, including mental health professionals, testified McDowell reported being abused by James. On the tapes, McDowell insists a number of times that James beat her up and "broke every bone" in her body. (Ex. 20.) But her demeanor on the telephone suggests she is not afraid of James; she repeatedly called to harass him with foul-mouthed messages threatening him, his new wife, and his extended family. In addition, she insists in those tapes that James should adopt her daughter because he was a good father figure. The tapes have probative value because they call into question the veracity of McDowell's reports of abuse by James. They were not offered simply to "make the jury dislike McDowell," (Appellant's Br. at 15), or to demonstrate a "propensity to commit the charged act." *Wilson*, 765 N.E.2d at 1270.

Neither do we agree with McDowell's allegation that the probative value of this evidence was outweighed by its prejudicial effect. Therefore, we find no reversible error.

## 2. *Re-opening Evidence*

■ McDowell argued she should be allowed to re-open the evidence to place James back on the stand. She wanted to impeach him with letters he wrote to her in which he admitted having an affair when they were married. McDowell alleged this impeachment would demonstrate he lacked credibility, thus the jury be less likely to believe his testimony that McDowell was the aggressor and he hit her only in self-defense.

The court denied McDowell's request:

[F]rom your description of what's in those letters, [counsel], I will give you of course an opportunity to make your record for an offer of proof in this case and enter them. You're talking about essentially one, in the court's view, insignificant and minor point about [James'] testimony yesterday [that] does not go to the heart of whether or not there was abuse that he inflicted upon Mrs. McDowell or vice versa. It's simply in the matter of whether he was faithful to her or had an affair.

(Tr. at 939.) When the court asked counsel if the letters were essentially to demonstrate James had an affair, counsel said "Yes." (*Id.*)

We need not decide if the court erred by declining to re-open the evidence, because McDowell cannot demonstrate she was prejudiced by the court's exclusion of this evidence. *See* Evid. R. 103 ("Error may not be predicated upon a ruling which ... excludes evidence unless a substantial

right of the party is affected...."). McDowell effectively questioned James' credibility through cross-examination. James' version of events differed from the reports McDowell had given to numerous therapists and doctors over the years. One therapist reported James admitted he abused McDowell and he agreed to attend a therapy group for abusers. When James was confronted with this evidence, he was unable to provide an explanation; instead, he claimed he did not remember the meetings. In addition, McDowell presented rebuttal testimony from Elmer Cann. Cann lived with James and McDowell during their marriage; he testified he heard, but could not see, them fighting on five or six occasions; and he remembered their fights always resulted in injuries to McDowell, but not to James.

Because that evidence already calls into question James' credibility, it is not apparent how McDowell was harmed by the exclusion of evidence regarding James' affair. As the court noted, the evidence did "not go to the heart of whether or not there was abuse that he inflicted." (Tr. at 939.)

### 3. Jury Instruction

The court instructed the jury: "Intent to kill may be inferred from evidence that a mortal wound was inflicted upon an unarmed person with a deadly weapon in the hands of the defendant." (*Id.* at 949–50.) McDowell claims this instruction was erroneous for four reasons.

We review the instruction of the jury for an abuse of discretion. *Stringer v. State*, 853 N.E.2d 543, 548 (Ind.Ct.App. 2006). Jury instructions are considered as a whole, and we will not reverse for error in one instruction "unless the entire jury charge misleads the jury as to the law in the case." *Id.* Moreover, the defendant must demonstrate the error prejudiced her substantial rights. *Id.*

Jury instructions should not "unnecessarily emphasize one particular evidentiary fact, witness, or phase of the case."[5] *Dill v. State*, 741 N.E.2d 1230, 1232 (Ind.2001). After quoting that legal rule, McDowell asserts "the Court set forth the instruction inferring intent on a page by itself. By doing so, it unfairly singled out that issue and would likely lead the jury to focus upon it rather than the instructions as a whole." (Appellant's Br. at 19.) The rule reiterated in *Dill* governs the content of the instruction, which should not emphasize some fact (or facts) over others, not the presentation of the instructions. Even if that rule dealt with presentation, we note the court began each new instruction on the top of a new page of paper. Therefore, the instruction at issue received no more emphasis than any other instruction. We find no abuse of discretion.

McDowell next asserts the instruction is superfluous because its content is covered by the instructions on voluntary manslaughter,[6] knowingly,[7] intentionally,[8]

---

**5.** To support this argument, McDowell quoted *Carie v. State*, 761 N.E.2d 385 (Ind.2002), and made reference to the decision of "The Court." (Appellant's Br. at 19.) The language quoted is in an opinion by Justice Dickson, who dissents from the denial of Carie's petition for transfer of jurisdiction. The Per Curiam opinion contains only four words: "Petition for transfer denied." 761 N.E.2d at 385. We admonish counsel to refrain from so

misrepresenting the authority he relies on and its precedential value.

**6.** Final Instruction 8 provided:

The Statute in the State of Indiana covering the crime of Voluntary Manslaughter, a Class A Felony as charged in Amended Count III, reads a follows:

A person who, knowingly or intentionally kills another human being while acting un-

and reasonable doubt.[9] We disagree. None of those other instructions explain that an inference regarding intent may be made based on certain facts.

■ McDowell claims the instruction relieves the State of its burden of proof regarding intent by telling the jury that it may make in improper presumption. Our Indiana Supreme Court has considered a similar instruction: "You are instructed that intent and purpose to kill may be inferred from the deliberate use of a deadly weapon in a manner calculated to produce death." *Brown v. State*, 691 N.E.2d 438, 445 (Ind.1998). Because the trial court instructed the jurors "it was permissible for them to infer intent from the

---

der sudden heat commits voluntary manslaughter, a Class B Felony. However, the offense is a Class A Felony if it is committed by means of a deadly weapon.

The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder to voluntary manslaughter. The State has conceded the existence of sudden heat by charging voluntary manslaughter instead of murder.

To convict the Defendant of Voluntary Manslaughter as charged in Amended Count III, the State must have proved each of the following elements beyond a reasonable doubt:

(1) The Defendant
(2) knowingly or intentionally
(3) killed
(4) Christopher Crume
(5) by means of a deadly weapon[.]

If the State failed to prove elements 1 through 5 beyond a reasonable doubt, you must find the Defendant not guilty of Voluntary Manslaughter, a Class A Felony, as charged in Amended Count III.

If the State did prove each of elements 1 through 4 beyond a reasonable doubt, but failed to prove element 5 beyond a reasonable doubt, you may find the Defendant guilty of voluntary manslaughter, a Class B Felony, a lesser included offense of Amended Count III.

If the State did prove each of these elements beyond a reasonable doubt, and the defendant also proved by a preponderance of the evidence that at the time of such conduct, as the result of a mental disease or defect, she was unable to appreciate the wrongfulness of the conduct, then you should find the defendant not responsible by reason of insanity.

If you find the State did prove each of these elements beyond a reasonable doubt and you further find at the time of such conduct she did not suffer from any mental disease or defect, and that she did appreciate the wrongfulness of her conduct, but you do find at the time of said acts she had a psychiatric disorder which substantially disturbed her thinking, feeling or behavior and impaired her ability to function, then you should find the defendant guilty but mentally ill.

If the State did prove each of these elements beyond a reasonable doubt and you have considered and rejected the defense of insanity and the idea of mental illness, you should find the defendant guilty of voluntary manslaughter, as charged in Amended Count III.

(App. at 495–96.)

7. Final Instruction 12 provided: "A person engages in conduct 'knowingly', when if he engages in the conduct, he is aware of a high probability that he is doing so." (App. at 500.)

8. Final Instruction 13 provided: "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." (App. at 501.)

9. Final Instruction 22 provided:

The State has the burden of proving the Defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the State's proof must be more powerful than that. It must be beyond a reasonable doubt.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the Defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the Defendant is guilty of the crime charged, you should find her guilty. If, on the other hand, you think there is a real possibility that she is not guilty, you should give her the benefit of the doubt and find her not guilty.

(App. at 510.)

deliberate use of a deadly weapon, not that they were required to draw that inference," the instruction created no impermissible mandatory presumption in favor of the State. *Id.*

The same is true here: the instruction informed McDowell's jury that intent "may be inferred" from certain other pieces of evidence. Thus no error occurred. *See also Bethel v. State,* 730 N.E.2d 1242, 1246 (Ind.2000) (discussing "instruction permitting the jury to infer intent to commit murder from the use of a deadly weapon in a manner likely to cause death or great bodily injury").

■ Finally, McDowell argues the "[u]se of the word 'infer' without a definition renders the instruction confusing." (Appellant's Br. at 21.) McDowell is concerned the jury may have believed it "should ignore contrary evidence." (*Id.*) As best we understand this argument, McDowell is asserting a juror who did not know the difference between "infer" and "presume" may have read the instruction to include a prohibited mandatory presumption, rather than a permissive inference. Because this argument is merely speculation, we cannot find an abuse of discretion.

### 4. *Sufficiency of Evidence*

■ McDowell claims the State failed to prove she had the *mens rea* required to convict her of voluntary manslaughter. Generally, we must affirm a conviction if the evidence most favorable to the conviction, and the reasonable inferences therefrom, demonstrate a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Childers v. State,* 719 N.E.2d 1227, 1229 (Ind.1999). When conducting our review, we may neither re-

weigh the evidence nor reassess the credibility of the witnesses. *Id.*

McDowell was convicted of voluntary manslaughter, which requires proof she "knowingly or intentionally . . . kill[ed] another human being . . . while acting under sudden heat." Ind.Code § 35–42–1–3. McDowell claims the evidence did not demonstrate she knowingly or intentionally killed Crume. A person acts intentionally "if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35–41–2–2(a). A person acts knowingly "if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind.Code § 35–41–2–2(b).

■ McDowell stabbed Crume in the neck with a knife. Whether she intended to kill Crume or merely to escape from the car as she claims was a question for the jury to decide based on the evidence and the credibility of the witnesses. We may not find error there. Neither could we find error if the jury convicted McDowell by finding she acted knowingly. "A knowing killing may be inferred from the use of a deadly weapon in a manner likely to cause death." *Oliver v. State,* 755 N.E.2d 582, 588 (Ind.2001). That death would likely result from a stab wound to the neck is common knowledge, as the neck contains large arteries and veins, the airway to the lungs, and significant neurological structures. The evidence was sufficient. *See id.* (evidence sufficient for knowing killing where defendant stabbed victim "three times, one of which penetrated his sternum and aorta" with great force).

### 5. *Sentencing*

The court sentenced McDowell to forty years of imprisonment, with five years suspended to probation, for Class A felony voluntary manslaughter.[10] The court

---

**10.** At the time of McDowell's crime the pre-

sumptive sentence was thirty years, and the

found three aggravators: criminal history, commission of an offense while on bond for this offense, and failure of prior attempts to rehabilitate.[11] The court also found defendant's history of mental illness was a mitigator entitled to "only moderate weight." (App. at 559.) The court determined the aggravators outweighed the mitigators and imposed an enhanced sentence.

▆▆▆▆ McDowell asserts the court gave too much weight to her criminal history as an aggravator because her history included only misdemeanors: two Class A misdemeanor convictions in 1992 of battery and battery on a police officer; a Class B misdemeanor conviction of public intoxication in 1999; a Class A misdemeanor conviction of operating a vehicle while intoxicated in 2000; and a Class B misdemeanor conviction of public intoxication in 2005. However, the court specifically found: "Although all convictions are for misdemeanor not felony offenses, the defendant's commission of these prior crimes demonstrates her pattern of committing offenses involving physical harm to persons and/or the abuse of alcohol, the same behaviors involved in this instant offense." (App. at 559.) Because the court specifically found the current crimes were related to her previous crimes we cannot say the court erred in giving McDowell's criminal history more than minimal weight. Moreover, while the court's statement regarding prior attempts to rehabilitate could not be a separate aggravator, it is a proper statement regarding the weight to be given McDowell's criminal history. *See*

*Morgan v. State*, 829 N.E.2d 12, 15 (Ind. 2005).

The court's second aggravator was that McDowell violated her bond in this case by committing another crime. The Presentence Investigation Report indicates on December 28, 2004, McDowell either committed or was charged with battery with bodily injury, a Class A misdemeanor. McDowell does not challenge the validity of this aggravator; she asserts only it should not carry sufficient weight to justify an enhanced sentence.

▆▆▆▆ We need not remand this case for resentencing because we have no doubt the trial court would impose the same sentence. While the court improperly found as an aggravator the failure of prior attempts to rehabilitate McDowell, the court properly could rely on that inference from McDowell's criminal history to assign additional weight to the criminal history aggravator. McDowell has not argued the court erred by rejecting her additional mitigators or in assigning only moderate weight to the mitigator it found. Accordingly, we affirm her sentence.

**CONCLUSION**

The court did not abuse its discretion by admitting evidence or by prohibiting the re-opening of McDowell's case. Neither did the court abuse its discretion by giving the jury an instruction regarding intent to kill. The evidence was sufficient to support McDowell's conviction, and the court

court could subtract ten years for mitigators or add twenty for aggravators.

11. McDowell claims the court also found "imposition of a reduced or less than the presumptive sentence would depreciate the seriousness of the crime" was an aggravator. The court's Sentencing Order contains no reference to this fact. In its oral statement at

sentencing, after listing all the aggravators and all the mitigators, the court "note[d]" imposing less than the presumptive sentence would depreciate the seriousness of the crime. (Tr. at 1091–92.) Based on this record, we do not believe the court improperly found that fact as an aggravator in violation of McDowell's Sixth Amendment right to a jury.

did not err in sentencing her. For all these reasons, we affirm.

Affirmed.

SHARPNACK, J., and BAILEY, J., concur.