# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 31 2017, 8:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ross G. Thomas
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

William Russell,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

May 31, 2017

Court of Appeals Case No.
69A01-1608-CR-1873

Appeal from the Ripley Circuit Court

The Honorable Ryan King, Judge

Trial Court Cause No.
69C01-1509-F1-2

**Barnes, Judge.**

# Case Summary

William Russell appeals his convictions and sentence for Level 1 felony attempted murder and Class A misdemeanor carrying a handgun without a license. We affirm.

# Issues

The issues Russell raises are:

> I. whether the trial court abused its discretion by denying his motion for mistrial following an alleged violation of his right to remain silent under the Fifth Amendment to the United States Constitution; and

> II. whether his sentence is inappropriate in light of the nature of the offenses and the character of the offender.

# Facts

In 2015, Dennis Ryker hosted Friday night parties at his parents' home in Ripley County. Russell regularly attended the parties. Larry Hurd and Jonathan Smith also attended the parties. On Friday evening, September 4, 2015, Ryker hosted a party, and Russell, Hurd, and Smith attended. All four men consumed alcohol at the party. Around 2:00 a.m., the men left the house to find something to eat. Russell drove himself and Ryker, and Hurd and Smith drove separately in Hurd's car. They found an open bar and ordered a round of drinks. While the men were drinking, two other bar patrons began to argue

with each other. Smith interceded and coaxed the larger of the two patrons, Jamie Craft, outside. Craft eventually left the bar.

[4] Smith returned to the bar. Shortly thereafter, around 3:00 a.m. when the bar was closing, he, Russell, Ryker, and Hurd walked out of the bar's side door and toward their vehicles. As the men walked, Smith vented to the group about Craft's behavior. Russell told Smith, "Quit being [an] idiot. Quit being a dumb a**." Tr. Vol. III p. 30. Smith shook his fist as he walked toward Russell and said "if [Russell] didn't stop talking to [him] that way, that [he'd] knock [Russell's] F-ing teeth out." *Id.* at 155. Russell, who now was standing at his vehicle, with one foot in the vehicle and one foot on the ground, reached into the vehicle, retrieved a handgun, and shot Smith in the chest. Smith staggered, and then brought his hands up and crossed his arms in an X-shape in front of his face. Russell fired a second time, and the second shot hit Smith in the hand and forearm and then traveled to Smith's chest.

[5] Russell threw the gun into his vehicle and drove away from the scene. Smith was transported to a hospital and survived his injuries. Based upon the information provided by witnesses at the scene of the shooting, the police began to search for Russell. Russell evaded the police for two days.

[6] On September 7, 2015, Russell appeared with his attorney at the Ripley County jail and surrendered to authorities. Two days later, the State charged Russell with Level 1 felony attempted murder, Level 3 felony aggravated battery, Level 5 felony battery with a deadly weapon, and Class A misdemeanor carrying a

handgun without a license. Following a four-day jury trial, Russell was found guilty as charged.

[7] At sentencing, the trial court vacated the Level 3 and Level 5 convictions due to double jeopardy concerns. The trial court, finding no mitigating factors and several aggravating factors, imposed consecutive thirty-seven-year and one-year executed sentences on the remaining convictions for attempted murder and carrying a handgun without a license, for an aggregate executed sentence of thirty-eight years.

[8] Russell now appeals. Additional facts will be provided as necessary.

## Analysis

### I. Fifth Amendment Right to Silence

[9] Russell first contends that the trial court abused its discretion by denying his motion for mistrial following an alleged violation of his Fifth Amendment right to remain silent. He maintains that the State's "use [during trial] of [his] post-arrest silence and lack of cooperation [with the investigation] both substantively and in an attempt to impeach [him] violated his rights under the [Fifth] and Fourteenth Amendments to the United States Constitution and denied him a fair trial." Appellant's Br. p. 14.

[10] At trial, Indiana State Police Detective Kip Main testified during the State's case-in-chief that he read the arrest warrant to Russell when Russell arrived at the jail with his lawyer and surrendered to the authorities. Detective Main

stated that, after Russell was taken into custody, "[t]he investigation continued. Even, even with the arrest of that day, part of the process is interviewing people and, you know, *I wanted to get a statement from William Russell*." Tr. Vol. IV p. 21 (emphasis added). Russell objected and moved for a mistrial. The trial court denied the motion but admonished the jury not to consider Detective Main's comment regarding wanting to take a statement from Russell.

[11] "A mistrial is an extreme remedy that is warranted only when less severe remedies will not satisfactorily correct the error." *Banks v. State,* 761 N.E.2d 403, 405 (Ind. 2002). A decision on a motion for mistrial lies within the sound discretion of the trial court, and we reverse only upon a showing of an abuse of that discretion. *Francis v. State*, 758 N.E.2d 528, 532 (Ind. 2001). To prevail, the appellant must show that he was placed in a position of grave peril to which he should not have been subjected. *Id.* The gravity of peril is measured by the probable persuasive effect on the jury's decision. *Oliver v. State,* 755 N.E.2d 582, 585 (Ind. 2001). The trial judge is in the best position to gauge the surrounding circumstances and the potential impact on the jury when deciding whether a mistrial is appropriate. *Id.*

[12] The Fifth Amendment to the U.S. Constitution, made applicable to the states through the Fourteenth Amendment, provides that no person shall be compelled in any criminal case to be a witness against himself. U.S. Const. amend. V; *Cox v. State,* 854 N.E.2d 1187, 1193 (Ind. Ct. App. 2006). A suspect is informed of this right to remain silent, among others, when given what is

commonly known as the *Miranda* rights.[1] Using as evidence of guilt that the suspect remained silent during police questioning can be a violation of the Fifth Amendment. *See United States v. Hernandez,* 948 F.2d 316, 322 (7th Cir. 1991). Determining whether the use of the defendant's silence is a violation of the Fifth Amendment turns on the manner in which the prosecution used the evidence and if the silence was before or after the defendant was read the *Miranda* rights.[2]

[13] In *Doyle v. Ohio,* 426 U.S. 610, 96 S. Ct. 2240 (1976), the United States Supreme Court held that using a defendant's silence, which occurred after arrest and receiving *Miranda* warnings, for impeachment purposes violates the Due Process Clause of the Fourteenth Amendment. *Id.* at 619, 96 S. Ct. at 2245. The underlying rationale was that use of a defendant's post-arrest, post-*Miranda* silence to impeach an explanation subsequently offered at trial would be contrary to the *Miranda* warnings' implicit assurance to an individual in police custody that silence will carry no penalty. *Id.* at 618, 96 S. Ct. at 2245. The United States Supreme Court has also held a defendant's post-arrest, post-*Miranda* silence could not be used substantively in the prosecution's case-in-chief. *See Wainwright v. Greenfield,* 474 U.S. 284, 295, 106 S. Ct. 634, 641, 88 L.

---

[1] *See Miranda v. Arizona,* 384 U.S. 436, 479, 86 S. Ct. 1602, 1630, 16 L. Ed. 2d 694 (1966) ("He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.").

[2] We note that no evidence was presented at trial as to when Russell received his *Miranda* warnings.

Ed. 2d 623 (1986). Whether a defendant's post-arrest, pre-*Miranda* silence may be used substantively has yet to be addressed by the United States Supreme Court, but Indiana courts have held that post-arrest, pre-*Miranda* silence cannot be used as substantive evidence in the State's case-in-chief. *See Rowe v. State,* 717 N.E.2d 1262, 1267 (Ind. Ct. App. 1999); *see also Akard v. State,* 924 N.E.2d 202, 209 (Ind. Ct. App. 2010), *aff'd in part and reversed in part on other grounds,* 937 N.E.2d 811 (Ind. 2010).

[14] Here, the record does not reveal when Russell received his *Miranda* warnings. Regardless of whether Russell's silence was pre-*Miranda* or post-*Miranda*, we find no reversible error.

[15] The statement elicited from Detective Main during the State's case-in-chief, "I wanted to get a statement from William Russell," was brief, nonspecific, and did not indicate that Russell had refused to speak with the detective. Tr. Vol. IV p. 21. Russell's counsel objected immediately and moved for a mistrial. After discussion at sidebar, the trial court denied the mistrial motion but did admonish the jury by stating: "Ladies and gentlemen of the jury, the Court directs you to, uh, disregard the last statement that was made by the witness testifying." *Id.* at 33.

[16] Reversible error is seldom found when the trial court has admonished the jury to disregard a statement made during the proceedings. *Alvies v. State,* 795 N.E.2d 493, 506 (Ind. Ct. App. 2003), *trans. denied.* A timely and accurate admonition to the jury is presumed to sufficiently protect a defendant's rights

and remove any error created by the objectionable statement. *Id.* Here, the trial court determined that an admonishment was sufficient and that mistrial was not warranted. Russell has not shown that the detective's statement placed him in a position of grave peril to which he should not have been subjected. We presume the trial court's timely and accurate admonishment in this case sufficiently protected Russell's rights.

[17] We find that no violation of Russell's Fifth or Fourteenth Amendment rights occurred. We conclude that the trial court did not abuse its discretion when it denied his motion for a mistrial.

## II. Appropriateness of Sentence

[18] Russell argues that his thirty-eight-year sentence is inappropriate in light of the nature of the offenses and his character. According to Russell, when the trial court sentenced him, it should have considered that, at the time of the shooting, Russell "acted under strong provocation and that the victim played a role in facilitating the offense" by threatening Russell with bodily harm. Appellant's Br. p. 16. Russell also contends that his general character is not one of violence, that he demonstrated a strong history of employment prior to suffering medical problems that left him with a permanent disability, he expressed remorse that the shooting occurred and a willingness to pay restitution, and his risk to reoffend is low.

[19] We may revise a sentence if it is "inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). Whether

the reviewing court regards a sentence as inappropriate turns on a "sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). This Court "must give 'deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give due consideration to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions.'" *Gil v. State*, 988 N.E.2d 1231, 1237 (Ind. Ct. App. 2013) (quoting *Stewart v. State*, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007)). Russell bears the burden of persuading us that his sentence is inappropriate. *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007).

[20] When considering the nature of the offense, the advisory sentence is the starting point to determine the appropriateness of a sentence. *See Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). Russell was found guilty of Level 1 felony attempted murder and Class A misdemeanor carrying a handgun without a license. The sentencing range for a Level 1 felony is "a fixed term of between twenty (20) and forty (40) years, with the advisory sentence being thirty (30) years." Ind. Code § 35-50-2-4(b). The sentencing range for a Class A misdemeanor is "a fixed term of not more than one (1) year." Ind. Code § 35-50-3-2. The trial court found as aggravating circumstances that the victim, Smith, suffered significant injuries greater than the elements necessary to prove the attempted murder count, that Smith's family will suffer hardship, that Russell showed a total lack of remorse, and that

Russell had misdemeanor criminal history and a prior probation violation. The court imposed consecutive sentences of thirty-seven years for the Level 1 felony and one year for the Class A misdemeanor. The sentence for the Level 1 felony was above the advisory sentence but below the maximum advised by the General Assembly.

[21] Regarding the nature of Russell's handgun offense, he allowed his license to carry the handgun to lapse and he did not bother to renew it. As for the attempted murder offense, it was indisputably callous. After a verbal altercation, Russell reached into his vehicle, pulled out his handgun, and fired two shots – aiming for Smith's chest. The first shot hit Smith in his chest. Because Smith attempted to shield himself by raising his arms and hands into an X-shape, the second shot hit the pinky finger of his right hand and his left forearm, and then lodged into his chest. Smith's forearm was shattered, his pinky finger was amputated, and the bullet remains lodged in Smith's chest. Smith has undergone multiple surgeries to repair his forearm. He has lost fifty percent of the strength he had in his right hand. Based on the foregoing, we conclude that the nature of Russell's offenses did not render his sentence inappropriate.

[22] Our review of the character of the offender reveals that Russell's criminal history consisted of three misdemeanor driving while suspended convictions from 2009 and 2010. Russell had one prior probation violation in 2010. The trial court found several aggravators including Russell's lack of remorse, evidenced by statements Russell uttered when he made calls from the Ripley

County jail: "that's what happens when you're my friend . . . I miss," and "this [shooting someone] was bound to happen some time." App. p. 59. The trial court gave "substantial weight" to all of the aggravators except Russell's criminal history, to which the court gave "little weight," finding that it was not a "substantial aggravating factor." App. p. 59; Tr. Vol. VII p. 48. The court considered the evidence presented at trial that Smith might have provoked Russell; however, the court determined that this could not serve as a mitigator because Russell possessed a handgun without a license, and "[b]ut for that illegal possession of a handgun, nobody's ever here [before the trial court]." Tr. Vol. VII p. 49.

[23] Russell carried a handgun for which he had no license. After a verbal altercation, he shot Smith twice in the chest, causing significant injuries, immediately left the scene of the shooting, and hid from the police for two days. During jail-house phone calls, Russell spoke of the shooting in a flippant manner. Russell's criminal history, though light, showed a pattern for disregarding the law. Russell's character does not persuade us to modify his sentence. We find that Russell's thirty-eight-year sentence is not inappropriate in light of the nature of the offenses and his character.

## Conclusion

[24] The trial court properly denied Russell's motion for a mistrial, and his sentence is not inappropriate. We affirm.

[25] Affirmed.

Kirsch, J., and Robb, J., concur.